**In re ROCO CORPORATION, d/b/a Standard Supply Company, Debtor.**

**Edward CONSOVE, Appellant,**

**v.**

**Avram COHEN, Trustee, Roco Corporation, d/b/a Standard Supply Company, Appellee.**

**Bankruptcy No. 81–9055.**

United States Bankruptcy Appellate Panel for the First Circuit.

June 25, 1982.

the reasonably equivalent value of a market

appraisal of $380,000 to 400,000."

John F. Bomster and Russell D. Pollock, Adler, Pollock & Sheehan, Providence, R. I., for appellant.

Edward J. Regan and Robert J. McGarry, Tillinghast, Collins & Graham, Providence, R. I., for appellee.

Before LAWLESS, Chief Judge, and GLENNON and LAVIEN, Bankruptcy Judges.

## OPINION

LAVIEN, Bankruptcy Judge.

This is an appeal from the Decision of the Bankruptcy Court for the District of Rhode Island, 15 B.R. 813, relating to two transfers from the Debtor to the Appellant. The Appellant, Edward Consove, claims that the Bankruptcy Court erred in finding that a $300,000 note and security interest granted to him by the Debtor in exchange for his

stock was a fraudulent conveyance. Appellant further claims as error the Bankruptcy Court's finding that $26,158.95 transferred from the Debtor to Appellant from July 24, 1980 to September 17, 1980 was a voidable preference. For the reasons below, we affirm the Bankruptcy Court's decision.

## I.  FACTS AS FOUND BELOW

Appellant, Edward Consove, was a shareholder, officer and founder of Roco Corporation, the Debtor. Roco Corporation (Roco) was in the hardware supply business doing business as Standard Supply Company. Roco was established in 1946 and up until February, 1978, Edward Consove and his partner, Arthur Rosen, each owned 50% of the outstanding stock of the company. When Arthur Rosen died in February of 1978, Roco Corporation redeemed his stock for approximately $130,000, funded in part by insurance proceeds and Edward Consove became the sole shareholder. At that time, Edward Consove began having discussions with his son, Gerald, about the possibility of Gerald's taking over the business. During Rosen's lifetime, he had displayed little confidence in Gerald's ability to manage the company. Gerald had been a full-time employee of the business since 1970 and a part-time employee prior to 1970. After some discussion between father and son, the following transactions took place. On November 1, 1979, Edward transferred his 100 shares, which was all of Roco's outstanding capital stock, to the corporation in exchange for a $300,000 note secured by a security interest in all of Roco's personal property, including inventory, accounts receivable and equipment. Financing statements were filed on October 30, 1979. The note provided for interest at 10% per annum, payable in monthly installments, or, at Roco's option, weekly installments of $600

with a year end adjustment. Six hundred dollars per week was substantially equivalent to Edward's salary and expense benefits prior to retirement. For the first five years only interest was due on the note. Thereafter the principal was to be amortized over 15 years by monthly payments. Edward also received a second note in the amount of $29,558.13 which represented an earlier loan to the company.[1]

After all of the stock was transferred to Roco, Gerald Consove purchased one share for $3,000 [1A] and became the sole shareholder of the company. Edward Consove resigned as director and president. Contemporaneously, Edward and his wife, Irene, directed a letter to Gerald which stated that the promissory note and any balance due thereunder would be given to Gerald at the time of the death of the surviving parent unless the note had been paid in full. Edward and his wife then moved to Florida.

In January, 1980, Gerald requested a $15,000 loan from his father because the company was having cash flow problems due to a slow collection of accounts receivable. Edward testified that when he was running the company it was not unusual for him to loan the corporation money to assist the cash flow when turnover of accounts receivable was slow. In response to Gerald's request, Edward and his wife loaned the corporation $15,000 which was eventually repaid on June 13, 1980.

In June of 1980, there was a fire in the corporation's warehouse and Roco was forced to close. Up until this time, Edward had been receiving weekly interest payments of $600. When these payments stopped Edward returned to Rhode Island. He discovered that his son had been mismanaging the corporation and diverting corporate funds for personal use. Edward took control of the company.[2] When Gerald

---

1. Edward conceded that the principal amount of $29,558.13 was incorrect and the amount actually owed was $26,158.95. Appellant's brief at 9.

1A. It is not clear from the record whether or not the $3,000 was ever paid to the corporation.

2. Appellant's brief states that Edward's assumption of control at this point was an exercise of his rights under the security agreement. However, we would point out that paragraph 12 of Appellant's Amended Complaint to Modify Stay states that Edward gave notice of his election to exercise his rights as a secured

was confronted about the diversion of corporate funds, he executed a personal note in the amount of $27,000 to the order of Roco and then, in his capacity as President of Roco, Gerald endorsed this note to Edward.

From July 24, 1980 until an involuntary bankruptcy petition was filed on September 23, 1980,[3] six checks were issued by Roco to Edward Consove in the total amount of $36,886.69. The books of Roco show that the six checks were applied to pay off the officer loan of $26,158.95 from Edward, and the balance of $10,727.74 was applied to reduce the principal balance on the $300,000 note to $289,272.26.

## II. PROCEEDINGS BELOW

After the bankruptcy petition was filed, Edward Consove brought a complaint to modify the 11 U.S.C. § 362 stay and to permit him to continue to exercise his rights as a secured creditor. The Trustee answered raising several affirmative defenses and counterclaims. The Bankruptcy Court entered a judgment for the Trustee based on his affirmative defense of fraudulent transfer and his counterclaims seeking avoidance of preferential transfers under 11 U.S.C. § 547.

## III. DISCUSSION

### A. *Fraudulent Conveyance*

The Bankruptcy Court found that the transfer of the common stock in exchange for the $300,000 note and security interest was fraudulent within the meaning of 11 U.S.C. § 548(a)(1) and § 548(a)(2).[4] Section 548(a)(1) provides an actual fraud standard, which requires that a court find actual intent to hinder, delay or defraud creditors. Section 548(a)(2) establishes a standard based upon objective criteria from which fraud can be implied. We will consider each finding separately.

■ The Bankruptcy Court initially found that the transfer was fraudulent under § 548(a)(2)(A) and (B)(i). The court found that Roco had received less than a reasonably equivalent value when the $300,000 note was exchanged for the stock and that Roco was rendered insolvent as a result of the transfer. If both "less than reasonably equivalent value" and insolvency or resulting insolvency are present, there is a conclusive presumption of fraud. *See* 4 Collier on Bankruptcy ¶ 548.03 (15th ed. 1981).

■ Both the finding of insolvency and the finding of "less than a reasonably equivalent value" are questions of fact. *See Klein v. Tabatchnick,* 610 F.2d 1043 (2nd Cir. 1979) (fairness of consideration is generally a question of fact); *Braunstein v. Massachusetts Bank & Trust Co.,* 443 F.2d 1281 (1st Cir. 1971) (insolvency is an issue for the trier of fact). Findings of fact by a bankruptcy judge can only be reversed if clearly erroneous. *See* Rule 16, First Circuit Rules Governing Appeals From Bankruptcy Judges to District Courts, Appellate Panels and Court of Appeals (effective date March 1, 1980); *In re Garland Corp.,* 6 B.R. 456, 460–61 (Bkrtcy. 1st Cir. 1980). A finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

creditor on September 12, 1980. Therefore, it is unclear under what basis Edward assumed control in June, 1980.

3. The Debtor consented to the Order for Relief on September 26, 1980.

4. § 548.
  (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—
  (1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred or such obligation was incurred, indebted; or
  (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
  (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; . . .

The Bankruptcy Court found that Roco received less than a reasonably equivalent value in the exchange of the $300,000 note for the stock. Appellant argues that it was not the economics of the redemption transaction that caused Roco's decline. He points out that the transaction did not materially change the operation of Roco and that since Edward received approximately $600 per week in salary prior to retirement, the interest payments did not cause an extraordinary burden on the cash flow of the corporation. While Appellant may be responding to the Bankruptcy Court's statement that the effect of the transaction on the company was catastrophic, none of Appellant's arguments address the issue of value received by the corporation. By arguing that the going concern or asset value of Roco did not decline, Appellant is trying to persuade this Court that the value received by Roco was whatever the corporation was worth on November 1, 1979. This premise is not correct. The Court had to determine the value Roco received when it acquired its own stock. The Bankruptcy Court found that the stock was virtually worthless to Roco. This finding is not clearly erroneous. The purchase by the corporation of its own stock is a form of shareholder distribution from which the corporation receives nothing. B. Manning, *A Concise Textbook on Legal Capital*, at 130 (1977).

Appellant's argument that he gave up substantial value when he relinquished his sole ownership interest in Roco is misguided. Section 548 does not apply to the value Edward Consove allegedly relinquished. Section 548 looks only to the value received by a corporation. The corporation received 100 shares of its own stock and then may have received $3,000 for one

share of stock. Regardless of whether Edward's ownership interest had any tangible or intangible value to him,[5] the stock was worthless to the corporation. "Treasury stock is not generally considered an asset, because it is widely held that a corporation cannot own a part of itself." M. Miller, *Comprehensive GAAP Guide*, at 38.04 (1979). The Bankruptcy Court was correct in concluding that Roco received less than a reasonably equivalent value when it exchanged the $300,000 note for its own stock.

Having concluded that the Court was correct in finding that the corporation received less than a reasonably equivalent value, we must also determine whether the Bankruptcy Court was correct in finding that the November 1, 1979, transaction rendered Roco insolvent. *See* 11 U.S.C. § 548(a)(2)(B)(i). The Court based its finding of insolvency on Roco's unaudited financial statements and expert testimony as to the impact of the stock redemption. On October 31, 1979, the day before the transaction in question, Roco's balance sheet listed assets of $683,503.55 and liabilities of $501,032.98. The Bankruptcy Court found that after the November 1st transaction the corporation's liabilities had increased by $300,000 to $801,032.98 which created an excess of liabilities over assets.[6]

Appellant argues that as a matter of law, it was an error for the Bankruptcy Court to base its findings of insolvency on the unaudited October 31, 1979 monthly balance sheet of Roco. Appellant contends that the Bankruptcy Court had to make a fair valuation of the company's assets on the redemption date. According to 11 U.S.C. § 101(26):

(26) "insolvent" means—

---

**5.** Edward's own testimony as to the value of the company is colored by the fact that Roco's accountant testified that the profit performance of the company had been marginal. Further, the ownership value was diminished when the inexperienced son was substituted for the capable, hard-working father.

**6.** The Bankruptcy Court found that the company's alleged assets on November 1, 1979 were

$687,503.55. Our calculations show that if the $3,000 for the one share of treasury stock was added to the October 31, 1979 assets, the assets would have been $686,503.55 ($683,503.55 plus $3,000). Roco's accountant testified that the entire transaction was not recorded until January 31, 1980. This balance sheet showed total assets of $847,169.10 against total liabilities of $914,940.73. (Tr. 2–154, 156).

(A) with reference to an entity other than a partnership, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—

(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

Although the final determination of insolvency may be a conclusion of law, the underlying findings of fact which support that conclusion can only be reversed if clearly erroneous. The question is at least mixed. Reversals of the finding of insolvency would only be appropriate if the reviewing court cannot determine the basis of the ruling below. *See In re Ollag Construction Equip. Corp.*, 578 F.2d 904 (2nd Cir. 1978). The Bankruptcy Court's use of the balance sheet was not error. The Court considered Appellant's contention that the additional $300,000 liability was offset by adding $300,000 worth of treasury stock to the assets and rejected it. We agree. A corporation redeems stock for a limited number of reasons. Common examples are retirement of all or part of a shareholder's interest, acquisition of another corporation, or as part of an employee bonus plan. If the purpose is to redeem a shareholder's interest, the purchase of the stock by the corporation is reflected on its books of account as a debit to the shareholder's equity account and not as an asset of the corporation. *See generally*, M. Miller, *Comprehensive GAAP Guide*, at 38.04–05 (1979). While the value of its stock may in part reflect the goodwill of a company, a corporation cannot purchase its own goodwill. Further, goodwill is rarely accepted as an asset in bankruptcy cases. *Jones v. Rowland*, 457 F.2d 44 (10th Cir. 1972).

Appellant argues that it was error for the Court to rely on the balance sheets because they were not audited. Further, he argues that balance sheets only reflect historical value, not the fair value of the company at the closing date of the accounting period. While balance sheets may generally only reflect historical value, these unaudited statements did reflect fair value. The contention that it was error for the Court to rely on the balance sheets because they were not audited and only reflect historical value is not applicable to the facts in this case. The issue was fair valuation. Edward Consove testified that a physical inventory (the major asset of the company) was taken every year and that his practice was to price most of the inventory at retail. Three lines of inventory were priced at the preceding year's cost and some other inventory was priced at its ultimate sales price. The inventory figure was then given to the accountant. The accountant did not independently value the inventory. Consove's method of valuing inventory was not at lower of cost or market as generally accepted accounting principles would require. Meigs, *Intermediate Accounting*, at 330 (3rd ed. 1974). Instead, the inventory was carried at retail sales price, or the preceding year's cost, whichever would result in a figure close to fair market value. Therefore, these figures were more likely to reflect actual value and not historical value. If the balance sheets were unaudited, they nevertheless consisted of Edward Consove's figures. The reliance on the balance sheets was not error.

■ The finding that the transfer rendered the corporation insolvent was not clearly erroneous. Since the objective elements of fraud under § 548(a)(2) were present, the Court was correct in ordering that Edward turn over the money he had received.

■ In addition to its finding of fraud under § 548(a)(2), the Bankruptcy Court found that Edward Consove actually intended to hinder, delay or defraud Roco's creditors under § 548(a)(1). Because we affirm the Bankruptcy Court's finding of a fraudulent conveyance pursuant to § 548(a)(2), we would ordinarily not have to reach this issue. However, Appellant contends that the Bankruptcy Court should have found that Edward Consove had a

valid lien under § 548(c)[7] for any value which he actually gave.[8] Section 548(c) requires good faith on the part of the transferee. For the reasons below, we affirm the Bankruptcy Court's finding of actual intent to defraud. This finding precludes the possibility of a § 548(c) lien because good faith does not exist where there is actual intent to defraud.

The finding of actual intent to hinder, delay or defraud is a factual finding which can only be reversed if clearly erroneous. *In re Perimeter Park Inv. Assoc.*, 616 F.2d 150 (5th Cir. 1980). Appellant argues that there was no basis for a finding of actual fraud. He states that the making of an unsecured working capital loan to the corporation in January and the negotiating of a long-term lease for the company prior to his retirement were actions which are contrary to a finding of actual intent to consummate a fraud. Finally, he argues that the creditors were put on notice because of the filing of the U. C. C. financial statements. However, the Court must look at the entire transaction.

Although there may not be direct proof of fraud, courts can also rely on the circumstances which would compel the same conclusion. *See Prisbey v. Noble*, 505 F.2d 170 (10th Cir. 1974). Courts will closely scrutinize intrafamily transactions. *Id.* Here, the events of November 1, 1979 can only be viewed as a single transaction. The father and son constructed a scheme whereby the son would purchase the father's stock interest at the expense of the corporation and its creditors. A transaction is not done in good faith if the earmarks of an arms-length transaction are missing. *Bul-*

*lard v. Aluminum Co. of America*, 468 F.2d 11, 13 (7th Cir. 1972). The issue is whether form or substance should control. The form of this transaction is a stock redemption of all outstanding shares for $300,000 by the corporation and then the purchase of one share by Gerald for $3,000 so that he could become the sole shareholder. Substantial right and justice, rather than technical form, control. *Jones v. Kendall*, 34 F.2d 344, 347 (4th Cir. 1929); *see also In re Atlas Foundry Company*, 155 F.Supp. 615 (D.C.N.J.1957) (the ostensible legal form of the transaction will not suffice to cloak the fraud with immunity). The substance of the transaction was a transfer of ownership of the company for, at most, $3,000 while the company assumed a liability of $300,000. Essentially, the claim of a stockholder became superior to the claim of the corporation's trade creditors with the creditors receiving no value. From the creditors' point of view, the value of the corporation was seriously eroded by the encumbering of all of the assets. This transaction is no different than a sale of stock from the father to his son with the son using the corporate assets to finance the sale. *See Lytle v. Andrews*, 34 F.2d 252 (8th Cir. 1929) In fact, the Debtor's Statement of Affairs states that "Edward Consove sold to his son Gerald Consove all the issued Capital Stock November 1979." In such a case, the seller is liable in an action brought for the benefit of the creditors to the extent of the value of the assets he has received. *Branch v. Steph*, 389 F.2d 233 (10th Cir. 1968). Because the above stated circumstances are sufficient to support a finding of actual intent to defraud, we affirm the Bankruptcy Court.[9]

---

**7.** Section 548(c) provides:

(c) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien or any interest transferred, may retain any lien transferred, or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

**8.** Appellant did not raise the issue of a § 548(c) lien below. He argues however, that the Bankruptcy Court, once it avoids a transfer under § 548(a), should automatically look to § 548(c) to determine what type of lien should remain. Because we find that no valid lien could arise, we form no opinion on the merits of this last contention.

**9.** Appellant submits that the finding of actual fraudulent intent was inconsistent with the Bankruptcy Court's finding that in June, 1980, prior to the 90-day preference period, Edward

■ On the basis of its finding that there was a fraudulent conveyance, the Bankruptcy Court ordered Edward to turn over to the Trustee the $21,600 in interest payments he had received from November 9, 1979 through July 11, 1980. Appellant argues that the $21,600 in interest payments on the $300,000 note can be recast as payments made in respect of an officer loan. The record indicates that these were interest payments. Our scope of review is limited to the record before us and what was properly presented to the Court below. *Bissonette v. Ainsworth (In re Bissonette)*, No. 81–9012 (Bankr. 1st Cir. 1981); *Union Bank v. Blum*, 460 F.2d 197 (9th Cir. 1972); *Dubnoff v. Goldstein*, 385 F.2d 717 (2nd Cir. 1967); *In re Williamson*, 431 F.Supp. 1023 (W.D.Okl.1976). A contention which was not presented to the Bankruptcy Judge will not be considered by the Appellate Court. *In re Middle Atlantic Stud Welding Co.*, 503 F.2d 1133, 1134 (3rd Cir. 1974).

### B. *Preferences*

When Edward resumed active control of the corporation from July 24 to September 17, 1980, the corporation repaid to him an officer loan of $26,158. The Bankruptcy Court found that the payment of the loan was a preference because the payment was made to a creditor, on account of an antecedent debt, made while the Debtor was insolvent, on or within 90 days prior to the

filing and allowed Edward to receive more than he would receive under Chapter 7. 11 U.S.C. § 547(b).[10]

■ Appellant contests this finding by stating that Edward was paid pursuant to his valid secured claim or section 548(c) lien. Since we have affirmed the Bankruptcy Court's finding of a fraudulent conveyance and have found no § 548(c) lien, Appellant's argument fails. This was a payment of an unsecured debt which squarely falls within the preference provisions of § 547(b).

### C. *Other Findings*

■ Finally, Appellant states that the Bankruptcy Court's finding that the September 1, 1980 note in the amount of $27,000 from Gerald Consove endorsed to Edward Consove was an obligation due to Roco should be reversed and remanded because it had no basis in the record. The note was not a part of the pleadings and was excluded from evidence by the Bankruptcy Court as irrelevant for that reason. Therefore, there is nothing in the record which supports the Bankruptcy Court's finding.[11] *See* Bankruptcy Rule 752. We vacate the court's order as to the $27,000 note and this issue is remanded so that the Trustee may amend his pleading if appropriate.[12] The Bankruptcy Court can then make the appropriate findings of fact or find that the issue has been dealt with in a different proceeding.

had no reasonable cause to believe that Roco was insolvent. Specifically, the Bankruptcy Court found that the $15,000 loan repaid to Edward in June 1980 was not a preference. This finding is not inconsistent because the Court was distinguishing between knowledge at different points in time. In June, 1980, Edward was living in Florida and had nothing to do with the operation of Roco. He had no knowledge of Roco's financial condition, solvency or insolvency. His only concern was the receipt of his $600 a week check and it wasn't until the checks stopped that he reinvolved himself in the corporation's affairs.

**10.** § 547.
    (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
        (1) to or for the benefit of a creditor;

        (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
        (3) made while the debtor was insolvent;
        (4) made—
        (A) on or within 90 days before the date of the filing of the petition; or . . .
        (5) that enables such creditor to receive more than such creditor would receive if—
        (A) the case were a case under chapter 7 of this title;
        (B) the transfer had not been made; and
        (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

**11.** At appellate argument, Appellant conceded that the note was a corporate obligation.

**12.** The court's opinion indicates that this note may have been the subject of a different adversary proceeding.

For the above reasons, we affirm the Bankruptcy Court's findings and conclusions on the issues of fraudulent transfer and preferences. The order requiring turnover of the $27,000 note is vacated and that issue is remanded for appropriate proceedings consistent with our order.