**In re KAYLOR EQUIPMENT & RENTAL, INC. formerly Kaylor Equipment & Supply, Inc., Debtor.**

**Thomas N. PARLON, Trustee, Plaintiff,**

v.

**Glen R. CLAIBORNE and Stanley C. Roy, Defendants.**

**Bankruptcy No. 3–83–00692.
Adv. No. 3–85–0714.**

United States Bankruptcy Court,
E.D. Tennessee.

Dec. 4, 1985.

Wade M. Boswell, Knoxville, Tenn., for plaintiff.

David L. Buuck, Knoxville, Tenn., for defendants.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

The plaintiff trustee seeks to avoid debtor's transfer of $15,000.00 to defendants as an avoidable transfer under 11 U.S.C.A. § 548(a)(2) (West 1979) or, in the alternative, under 11 U.S.C.A. § 544(b) (West 1979).

### I

Proof was submitted to the court by stipulation (Exhibit 1), by defendants' request for admissions (Exhibit 2), and by testimony of plaintiff Thomas Parlon, trustee, and defendants Glen R. Claiborne and Stanley C. Roy. The proof is as follows.

Stanley C. Roy, Glen R. Claiborne and Russell S. Kaylor each owned a one-third interest in the debtor corporation. They acquired these interests about August 18, 1982. Claiborne took no active part in the operation of the business. Roy, a Certified Public Accountant, oversaw the books and records of the debtor and supervised their maintenance by the company bookkeepers until January 1983. Russell S. Kaylor was president of the debtor and in charge of the day-to-day operations of the corporation. The company was essentially under Kaylor's exclusive supervision and management after Roy's involvement ceased in January 1983. Kaylor continued to operate the corporation as debtor-in-possession from April 29, 1983, (the date of the filing of the Chapter 11 petition) until mid-July 1983 when the plaintiff trustee took over the operations of the business. 11 U.S.C.A. § 1108 (West 1979). The trustee continued to employ Kaylor as a salesman for the debtor until the debtor was liquidated in November 1984.

From January 1, 1983, through the liquidation, Robert W. Strang, father-in-law of Russell S. Kaylor, was the C.P.A. hired by the company and its trustee to maintain its books and records. In the scope and course of his employment as an accountant for the debtor corporation, Strang prepared monthly balance sheet statements. These have been entered into evidence as Exhibits 5, 6, 7 and 8, and as an attachment to Exhibit 2 (Request for Admissions).

Further undisputed facts are that on February 18, 1983, defendants received a check in the amount of $10,000.00 drawn on one of the debtor corporation's bank accounts. Subsequently, on March 1, 1983, a check in the amount of $5,000.00 was issued to defendants from debtor corporation's bank account. However, this check was returned unpaid for insufficient funds, and on the face of the check is written the word "void." On March 7, 1983, defendants received a cashier's check in the amount of $4,000.00. Additionally, on March 7, 1983, defendants received a check in the amount of $1,000.00, payable from the debtor corporation's bank account.

Defendants testified that sometime during the latter part of January or early part of February, they reached an agreement with Russell S. Kaylor for him to purchase defendants' ownership rights in the corporation for the sum of $15,000.00 plus the additional consideration of Russell Kaylor

obtaining defendants' release from personal liability on approximately $130,000.00 in promissory notes, payable by the corporation and guaranteed by defendants Claiborne and Roy. Defendant Claiborne testified that the agreement was between the defendants and Russell Kaylor individually and not between defendants and the corporation. Defendant Claiborne testified that he did not know where Kaylor was obtaining the funds to discharge his obligations under the agreement of sale. Claiborne further testified that if the funds were borrowed by Kaylor from the corporation, the corporation should have carried a shareholder account receivable evidencing the indebtedness owed by Kaylor to the corporation for $15,000.00. This testimony was unrebutted. The court notes that the plaintiff did not make available either Russell S. Kaylor or Robert W. Strang who had been employed by debtor corporation throughout the entirety of its proceedings in this court.

The defendants submitted requests for admissions under Bankruptcy Rule 7036. These admissions were not denied within the time frame provided under that rule, which incorporates Rule 36 of the Federal Rules of Civil Procedure. The request for admissions were admitted into evidence as Exhibit 2. Admission 2 says that the January balance sheet (showing $47,906.18 in net shareholder equity) properly reflects the financial condition of Kaylor Equipment & Supply, Inc. as of that date. Admission 3 states that the "total fair market value of the assets of Kaylor Equipment & Supply, Inc. as of March 1, 1984 [sic] was greater than the total liabilities of the debtor corporation on said date." Admissions 4 and 5 state that sales for the month of February ($110,118.51) were the highest in the company's history.

Roy testified that after the trustee was appointed, he examined the books and records of the corporation. He testified that he had no control of the debtor corporation from January 1983 forward. He testified that from January 1983 through June 1983, there were additional assets of the corporation which either disappeared or were not satisfactorily accounted for on the books of the corporation. Roy testified that he discovered there were some $19,000.00 in cash sales which were unaccounted for during the month of April. Roy also testified that he discovered certain unaccounted for discrepancies in the inventory of the corporation during its tenure as a debtor-in-possession.

Roy further testified that on or about the dates of the transfers to Claiborne and Roy, if the corporation were then liquidated, it would have had enough money to pay all its debts.

## II

The court will first address the trustee's claim for relief under § 544(b). That subsection states as follows:

The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C.A. § 544(b) (West 1979).

In order for the trustee to prevail under § 544(b), the trustee must first establish that at the time of the transaction there was, in fact, a creditor in existence who was holding an unsecured claim that is allowable under 11 U.S.C. § 502. Secondly, the trustee must establish that the transaction could have been avoided by such a creditor under applicable local law. *Hadley v. Acquafredda*, 26 B.R. 909 (Bankr.M. D.Fla.1983). Plaintiff introduced no relevant proof in this regard and indicated at trial that he would proceed only under § 548. The court will therefore dismiss the trustee's prayer for relief under § 544(b).

The court will next consider the applicable law under § 548(a)(2), which provides:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within

one year before the date of the filing of the petition, if the debtor—

.　　.　　.　　.　　.

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.[1]

11 U.S.C.A. § 548(a) (West 1979).

The court finds that the debtor corporation did receive less than a reasonably equivalent value in exchange for the transfer which was made. The determinative issue, therefore, is whether the debtor corporation was insolvent on the date of the transfer or became insolvent as a result of the transfer.

The term "insolvent" is defined in Bankruptcy Code § 101(26) as follows:

"[I]nsolvent" means—

(A) with reference to an entity other than a partnership, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—

(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

(ii) property that may be exempted from property of the estate under section 522 of this title....

11 U.S.C.A. § 101(26) (West 1979).

Since the debtor is a corporation there is no property which might have been ex-

empted from property of the estate under § 522. Nor is there any proof in the record that there was any property transferred, concealed or removed with intent to hinder, delay, or defraud the debtor's creditors. Therefore, the determinative factual question is the solvency or insolvency of the debtor corporation. The court must make a factual finding as to whether the debtor corporation's assets at fair valuation exceeded the sum of the debtor corporation's debts at the time of the transfers. This constitutes a standard balance sheet definition of insolvency. H.R.Rep. No. 595, 95th Cong., 1st Sess. 312 *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6269; S.Rep. No. 989, 95th Cong., 2d Sess. 25 *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5811. It is a balance sheet test in which the assets are represented at fair valuation and not at strictly historical value. *Consove v. Cohen (In re Roco Corp.),* 21 B.R. 429 (Bankr. 1st Cir.1982), *aff'd,* 701 F.2d 978 (1st Cir.1983).

In an action by a bankruptcy trustee to set aside a conveyance under § 548, the trustee has the burden of proving that the conveyance was made under conditions bringing it within § 548. The burden never shifts, although the burden of going forward with the evidence to rebut a prima facie case may shift. 4 *Collier on Bankruptcy* § 548.10 (15th ed.1985).

The following proof was presented to the court respecting the issue of the debtor's insolvency at the time of the disputed transfers:

1. In-house financial statements (balance sheets) of the debtor for January, February, and March of 1983. These balance sheets were prepared by C.P.A. Robert W. Strang, the father-in-law of Russell S. Kaylor. The January statement showed a positive shareholder's equity of $47,-906.18. There were two *different* balance sheets for February, one showing a positive shareholder's equity of $27,021.00 and

---

1. As to subsections (2)(B)(ii) and (iii), there is no proof in the record that the debtor by this transaction intended to incur or believed that it would incur debts beyond its ability to pay as

those debts matured. Nor is there any proof in the record that the transaction left the debtor corporation with remaining property that was an unreasonably small capital.

one showing a negative shareholder's equity of some $10,683.00. Similarly, there were two different balance sheets for March, one showing a negative shareholder's equity of some $1,444.00 (and bearing the notation "See Correction") and one showing a positive shareholder's equity of $22,091.00.

2. Testimony of the bankruptcy trustee, Thomas Parlon. Parlon testified essentially that he did not believe that the higher accounts receivable figures in the February and March statements showing positive net worth were justified, that the accounts had not been properly "aged." He also testified he could not verify the existence of a listed $24,000.00 asset designated as "pre-paid consulting fees."

3. Testimony of Stanley C. Roy. Defendant Roy (a C.P.A.) testified that if, on the date of the transfers, all of the assets of the corporation had been sold, all of the debtor's debts could have been paid. More significantly, Roy testified as to the existence of certain assets which disappeared or were not later accounted for, particularly during the period that the debtor was being operated under the exclusive management of Russell Kaylor.

4. Defendants' Request for Admissions. Plaintiff failed to deny, or even respond to, this request filed on May 29, 1985. Number 2 was an admission that the January statement accurately reflected the debtor's financial condition on January 31, 1983. Number 3 was an admission that "[t]he total fair market value of the assets of Kaylor Equipment & Supply, Inc. as of March 1, 1984 [sic], was greater than the total liabilities of the debtor corporation on said date."

■ Emphasizing again the plaintiff's burden of proof on this issue, the court must simply conclude that plaintiff has failed to prove his case. In proving the insolvency of the debtor, a trustee may meet his burden of proof by showing that the debtor was insolvent at a reasonable time subsequent to the date of the alleged transfer, accompanied by proof that no substantial change in the debtor's financial condition occurred during the interval. This is a method some courts refer to as retrojection. *See generally Lancaster v. City and County Bank of Washington County (In re Tuggle Pontiac-Buick-GMC, Inc.)*, 31 B.R. 49 (Bankr.E.D.Tenn. 1983).

■ The plaintiff trustee offered some proof of insolvency at a time subsequent to the disputed transfer. However, there was no proof that there had been no substantial change in the financial condition of the corporation in the interim period. In fact, the only testimony as to any change in condition was defendant Roy's testimony that he discovered that Russell S. Kaylor, while operating the debtor corporation as a debtor-in-possession (prior to the time that the plaintiff was appointed trustee), had not accounted for $19,000.00 in cash sales and had further not accounted for additional inventory assets. Roy further testified that if these assets were added to the balance sheet assets of the debtor corporation they would increase the total fair valuation of the assets of the debtor corporation during the interval between the disputed transfer and the filing of the bankruptcy petition. (The debtor's bankruptcy schedules show a balance sheet insolvency as of April 29, 1983.)

With respect to the debtor's conflicting in-house balance sheets, plaintiff simply presented the court with insufficient proof to enable the court to conclude that at the relevant time the debtor's liabilities exceeded its assets.

Plaintiff failed to establish that the assets represented on the balance sheets showing positive net worth did not represent a fair valuation of the debtor's assets. Plaintiff also failed to meet the significant questions raised by Roy's testimony regarding the disappearance of assets during the period the debtor corporation was essentially under the exclusive management of Russell Kaylor.

Finally, the court notes plaintiff's failure to deny pertinent admissions in defendants' request for admissions. Defendants sub-

mitted the request for admissions under Bankruptcy Rule 7036 to the plaintiff on May 24, 1985. The admissions were not denied by the plaintiff as provided for in Fed.R.Civ.P. 36.

Rule 36(a) provides:

Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney....

Fed.R.Civ.P. 36(a).

However, Rule 36(b) provides:

Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Rule 16 governing amendment of a pre-trial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.[2]

Although plaintiff's attorney attempted to offer some explanation respecting the failure to deny the requested admissions, plaintiff did not move to withdraw or amend the admissions. However, the court observes that, in view of its above conclusions, it need not place determinative reliance on the admissions.

Given the totality of the proof, even absent the admissions, the court would be compelled to conclude that the plaintiff has failed to carry his burden of proving that the debtor was insolvent or was rendered insolvent as a result of the transfers to defendants. Accordingly, judgment will be entered in favor of defendants.

2. In this connection the court notes:

The court has power to allow additional time for a response to a request for admissions even after the time fixed by the rule has expired. Thus the court can, in its discretion, permit what would otherwise be an untimely answer. Though some of the cases seem to turn on whether the failure to provide a timely answer was excusable neglect, a test generally appropriate under Rule 6(b)(2) for enlargement of time after the period has expired, it would seem that the test now stated in Rule 36(b) for withdrawal of admissions is tailored more precisely to the purposes of Rule 36 generally, and that the admission that otherwise would result from a failure to make timely answer should be avoided when to do so will aid in the presentation of the merits of the action and will not prejudice the party who made the request.

8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2257 at 719–20 (1970).