**In re Sunshine KAYLOR, Debtor.**

**Richard A. MONEY, Trustee, Plaintiff,**

**v.**

**COASTAL FEDERAL SAVINGS & LOAN and First Virginia Bank, Defendants.**

**Bankruptcy No. 7–88–01834–HPA–7. Adv. No. 7–91–00089.**

United States Bankruptcy Court, W.D. Virginia, Abingdon Division.

April 19, 1996.

---

Robert T. Copeland, Copeland, Molinary & Bieger, Abingdon, Virginia, for Debtor.

John E. Kieffer, Bristol, Virginia, for Richard A. Money, Trustee/Plaintiff.

David J. Hutton, Boucher & Hutton, Abingdon, Virginia, for First Virginia Bank–Mountain Empire/Defendant.

Winfrey T. Wade, Richmond, Virginia, for Coastal Federal Savings & Loan/Defendant.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

This matter is before the Court on remand from the district court for additional findings of fact and conclusions of law. The thrust of this Adversary Proceeding, alleging violation of fraudulent transfer under § 548(a)(2), involves a transaction entered into in July of 1988 wherein the Debtor, Sunshine Kaylor, and his wife executed a second Deed of Trust on property ("South Carolina property") owned by them jointly in Myrtle Beach, South Carolina, to First Virginia Bank ("Bank") to secure a pre-existing note payable to the Bank, in exchange for the release and substitution of other collateral securing the note.[1] The sole issue here is whether the Trustee may avoid this transaction between the Debtor and the Bank under 11 U.S.C. § 548(a)(2)(A) and (B)(i) as having been made within one year of filing of the Petition in this Court for less than reasonably equivalent value during a time when the Debtor was insolvent or became insolvent.

The history of this Adversary Proceeding is as follows: The Debtor filed his Chapter 11 Petition on November 24, 1988, which was converted to Chapter 7 on May 14, 1992. This Adversary Proceeding was originally filed on April 25, 1991 by the Debtor requesting a determination of liens and leave to sell the South Carolina property free and clear of liens. The Court approved the sale and reserved for further hearing all issues surrounding the alleged fraudulent transaction under § 548(a).[2] Upon conversion to Chapter 7, the Trustee was substituted as party Plaintiff, for a determination of whether the Deed of Trust given to First Virginia Bank by the Debtor was a fraudulent transfer under 11 U.S.C. § 548(a)(1) & (2).

Following a hearing, the Court entered its Memorandum Opinion on September 29, 1993, holding that the Trustee had not sustained the burden of proof that there was actual intent to delay, hinder, or defraud creditors under 11 U.S.C. § 548(a)(1). The Trustee and the Creditors' Committee then moved for a new trial on the issue of "constructive fraud" under § 548(a)(2). At that hearing, counsel for the Trustee announced

---

1. The note payable to the Kaylors was in the principal amount of approximately $10,000.00 to $11,000.00. (*Findings of Fact & Conclusions of Law*).

2. The Court approved the sale of the property on February 25, 1992 for $98,000.00, whereby the sum of $34,586.61 remained after satisfaction of prior liens, real estate taxes, and closing costs.

Since Mary Kaylor, Debtor's wife, was not a party to the bankruptcy proceeding, her one-half interest in said proceeds was distributed to the Bank and the remaining $17,293.30 was to be held in escrow pending a determination of other issues under § 548(a). (*See* Orders dated 2/25/92, 6/16/92, and 8/13/92).

to the Court that he elected not to introduce any additional evidence. (Tr. at 11, 12/21/93). After reviewing the September 29, 1993 Opinion and the evidence before the Court, the Court reaffirmed its decision and denied the motion for a new trial. On appeal, the district court remanded this case for further findings of fact regarding the issue of value and solvency under 11 U.S.C. § 548(a)(2).

In his October 19, 1994 Opinion, Judge Wilson affirmed this Court that there is no evidence to support the contention that the Debtor acted with intent required by § 548(a)(1) to render the transaction avoidable. The district court also agreed with this Court's finding that Debtor's Deed of Trust to the Bank was in the "normal course of business" and was an ongoing credit financing and a consolidation and rearranging of the current financial arrangement under normal banking procedures by giving the additional collateral in the property in South Carolina. *Richard A. Money, Trustee v. Coastal Federal S & L and First Virginia Bank,* Civ. Action No. 94–0052–A (W.D.Va. Oct. 19, 1994) [hereinafter "10/19/94 Op."]. The Court further affirmed this Court that there was ample evidence that First Virginia Bank and Kaylor had a long-standing credit arrangement and that the transaction in question was a continuation of that relationship. *Id.* at 4–5. The Court remanded the case to determine the Debtor's insolvency at the time the Deed of Trust was transferred, under § 548(a)(2). *Id.*

Upon remand, this Court scheduled a further evidentiary hearing to enable Trustee to present additional evidence, at which time counsel for Trustee again announced that prior evidentiary hearings had developed the evidence and that the record on all issues was complete and no additional evidence would be presented. (Tr. at 4, 4/4/95). Counsel for the Trustee relies on Debtor's schedules stating that "the *schedules* demonstrate insolvency ... [and] also demonstrate the values of the property." *Id. (emphasis added).* The Trustee elected not to introduce any additional evidence. First Virginia Bank introduced additional evidence in the nature of testimony from Mr. Richard Allen Martin ("Martin"), a representative of the

Bank, who testified as to the value of the property. Having no additional evidence for consideration, this Court held that the Trustee failed to meet the burden of proving that the Debtor received less than "reasonably equivalent value" for the transaction and, having failed to prove the first prong of the formula, it was unnecessary to reach the issue of insolvency.

The Trustee again appealed and the district court again remanded the case to this Court to determine whether the Debtor was insolvent at the time of the transaction and whether reasonably equivalent value was given. *See Richard A. Money, Trustee v. Coastal Federal and First Virginia Bank,* Civ. Action No. 95–CV–140–A (W.D.Va. Oct. 18, 1995) [hereinafter "10/18/95 Op."]. Upon hearing scheduled by this Court on remand, the Trustee again represented to the Court that the record is complete and no additional evidence would be submitted. Upon request by the Court in an effort to learn the parties' positions with reference to the evidence of record, the parties submitted proposed findings of fact and conclusions of law. These proposed findings and conclusions are affixed hereto as appendices.

From the record before the Court from prior hearings, documentary and otherwise, and from the proposed findings, it appears to the Court that documents referred to as evidence for the Court to consider is extremely speculative and leaves substantial uncertainty concerning the facts upon which the Court is called upon to decide the merits of this matter.

For example, the appraisal of First Virginia Bank dated June 24, 1988, which apparently was made in connection with the refinancing in question, and noted thereon as a "Walk–By Inspection," lists the value of the property in the identical amounts appearing on the Horry County tax assessment of $59,200.00 for the building and $96,000.00 for the land, for a total of $155,200.00.

The financial statement submitted by the Debtor to First Virginia Bank dated September 18, 1985, approximately three years prior to the crucial date in question, shows total assets of $594,577.00 and total liabilities of $181,883.00 with a net worth of $412,694.00.

Listed thereon was the Myrtle Beach house and lot acquired in 1978 at a cost of $60,000.00 and showing a market value of $150,000.00 with a first Deed of Trust of $32,500 due and owing to Coastal Federal Savings and Loan. The financial statement given by the Debtor to First Virginia Bank dated April 1, 1987, shows total assets of $579,800.00 and total liabilities of $217,646.00 with the Myrtle Beach property noted as being acquired for $60,000.00, with a market value of $150,000.00 and the Deed of Trust balance of Coastal Federal of $28,000.00.

The Debtor's schedules filed with the Chapter 11 Petition on November 24, 1988, approximately 4 months following the date in question, notes on the list of creditors as "date security obtained or date incurred" as to the debt itself as 1987 in virtually every instance, including the first Deed of Trust of Coastal Federal, which, in fact, and without question, was acquired and the date incurred in 1978. All secured and unsecured creditors listed on said schedules were noted as "disputed claims" under the category as to whether claims were contingent, unliquidated, or disputed. The claims with the designation "disputed" reflect that no specific amount listed would be reliable as evidence or as a criteria for determining the amount due and owing from the schedules themselves without additional evidence.

On Schedule B-1, real property listed totaled $525,000.00 with the Myrtle Beach property listed at a value of $200,000.00. Schedule B-2, as to personal property, lists a total value of $131,950.00. The recapitulation Summary attached to the schedules shows total liabilities of $441,150.00 with total assets of $656,950.00. These are reflected as of the date of the petition of November 24, 1988.

In the "Stipulation of Facts" submitted by First Virginia Bank, Paragraph III states: "that there is no direct evidence of the fair market value of the Myrtle Beach property in July 1988," and this Court agrees with this statement. The Court further concludes that from the evidence there is no direct evidence

as to the value of the Debtor's estate or the amount of indebtedness on the date in question of July 1988 that is not totally speculative.

The issue, then, is whether the Debtor received less than reasonably equivalent value at a time when he was insolvent or became insolvent, pursuant to Bankruptcy Code § 548(a)(2).

11 U.S.C. § 548(a)(2) states as follows:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(I) was insolvent on the date of that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

The Trustee, or Plaintiff, has the burden of proof not only to prove reasonable equivalent value but also to prove the Debtor's insolvency. *In re Morris Communications NC, Inc.*, 914 F.2d 458 (4th Cir.1990).[3]

If the Trustee fails to meet the burden of proof to either element, the entire formula fails. The Trustee must prove both prongs of § 548(a)(2). *Id.*

In its July 18, 1995 Memorandum Opinion, this Court found that the Trustee had not sustained the burden of proof to show that the Debtor received less than "reasonably equivalent value"; and, having failed to meet the first prong, it was unnecessary to reach the second issue of insolvency. However, upon remand, the district court listed several factors for the Court to consider regarding the issue of insolvency. (10/18/95 Op. at 3). They are as follows:

(1) Debtor's financial statements submitted to First Virginia Bank in 1985 and 1987.

---

**3.** "The burden of establishing that debtor received less than measurably equivalent value for transferred property and was insolvent on date of such transfer or became insolvent as result of such transfer, which occurred within one year of filing of bankruptcy petition, so as to permit avoidance of transfer, rests on the trustee." *Id.* at 466.

(2) Debtor's schedules filed in November, 1988.

(3) Debtor's indebtedness of $123,000 to First Virginia Bank in July, 1988.

(4) Debtor's difficulty making loan payments, leading First Virginia Bank to terminate an ongoing relationship with him.

The first factors of evidence submitted by the Trustee are the financial statements dated September 18, 1985 and April 1, 1987. The Trustee did not present financial statements or additional evidence of 1988, the date of the transaction; and since the crucial date in determining insolvency is the date of the transaction, the 1985 and 1987 statements offer slight probative value to the Court. *See In re Kaylor Equip. & Rental, Inc.,* 56 B.R. 58 (Bankr.E.D.Tenn.1985). Additionally, Mr. Martin testified without contradiction at the March 16, 1993 hearing, that "as far as the financial statements provided to the Bank ... it never appeared that he was insolvent." (Tr. at 44, 3/16/93).

The second factor to consider is the Debtor's schedules filed on November 24, 1988. The schedules indicate as hereinabove noted that claims were in dispute. Furthermore, the Debtor's schedules show $656,950.00 in assets of real and personal property and $441,150.00 in liabilities. (Debtor's Schedules, November 24, 1988). In *Liberty National Bank v. Bear,* 265 U.S. 365, 44 S.Ct. 499, 68 L.Ed. 1057 (1924), the Supreme Court noted that even the admission by the debtor in his petition that he was insolvent, which is not the case here, was "at the most, an admission of such insolvency ... when the petition in bankruptcy was filed—a very different thing from insolvency at the time the [judgment] was recovered." *Id.* at 370, 44 S.Ct. at 501. Furthermore, there is no "presumption" of insolvency for any period before the Petition in bankruptcy was filed. *Id.* In fact, Mr. Martin specifically stated in his testimony, without contradiction as above noted, that "it never appeared that the [Debtor] was insolvent." (Tr. at 44, 3/16/93).

As for the third factor, the Trustee failed to present any evidence to the Court which tends to show that, when the collateral was substituted, Debtor's indebtedness of $123,-000 to First Virginia Bank rendered him insolvent.

The fourth factor was Debtor's difficulty making loan payments. Upon examination of the testimony of Mr. Martin on two separate occasions, March 16, 1993 and April 4, 1995, there is no indication that the Bank terminated an ongoing loan relationship with the Debtor. Mr. Martin testified that the Debtor was having problems making his payments and that there were times that cars were not selling, but "it never appeared that he was insolvent." *Id.* at 44. In light of the facts overall, it would not seem appropriate to conclude that, merely because car sales were slow, the Debtor was insolvent.

Thus, the Court finds that the Trustee's burden has not been sustained. The Trustee submitted to the Court, without any explanation or additional evidence, the speculative nature of the alleged insolvency issue of the Debtor and the Court is unable to make a determination based on this record that the Trustee has sustained this burden.

The district court set forth specific elements of evidence to be considered regarding "value." Pursuant to the remand Order of the district court, it agreed that the Trustee has the burden of proving that Kaylor did not receive "reasonably equivalent value." (10/18/95 Op. at 2). The Court further agrees that the Trustee has the burden of proving the Debtor's insolvency at the time of the transfer in July of 1988. *Id.* at 3. As to "value," the evidence in addition to the foregoing, is as follows:

(1) The fact that the house was purchased in 1978 for $60,000.00.

(2) A tax appraisal valuing the house at $156,000.00, dated September 8, 1988.

(3) A financial statement submitted by Kaylor to First Virginia Bank dated April 1, 1987 valuing the property as $150,000.00.

(4) Appraisal Report prepared by First Virginia Bank dated June 24, 1988.

(5) The bankruptcy Schedules filed in November, 1988 listing the value of the house as of 1987 at $200,000.00.

(6) The house sold on February 25, 1992, more than three years following the

filing of the Petition in this Court, for approximately $99,000.00.

The factors are taken into consideration as follows: As an initial matter, it is undisputed that the Bank gave up and Mr. Kaylor received the release of collateral previously held by First Virginia Bank consisting of a note payable to Mr. & Mrs. Kaylor at a principal value of approximately $10,000.00 to $11,000.00. It is also undisputed that the witness, Mr. Martin, a representative of First Virginia Bank, testified that the Bank would not have released the note as collateral unless Mr. Kaylor pledged other collateral in its place as a substitute therefor. Thus, the Kaylors executed a second Deed of Trust on the South Carolina property to secure the Bank's pre-existing debt. Martin testified further that the Bank did not obtain a formal appraisal as to the value of the property. (Tr. at 10, 4/4/95). The Bank relied solely upon the representations of Mr. Kaylor, with whom they had a long-standing business relationship. In fact, the district court held that there is "ample evidence that First Virginia and Kaylor had a long-standing credit arrangement and that the transaction in question was a continuation of that relationship." (Op. at 5, 10/19/94).[4]

The Bank knew only that the property was purchased for $60,000.00 and that there was an existing note secured by a Deed of Trust on the property with a payoff of approximately $30,000.00 to $35,000.00. They had financial statements dated 1985 and 1987 where Mr. Kaylor thought the property was worth approximately $150,000.00. The Bank released its lien and accepted the Deed of Trust based on these representations only.

The only other evidence in the record is the fact that the house sold more than three years later for approximately $99,000.00. The schedules filed in November 1988, subsequent to the transaction at issue, listed the value of the property at approximately $200,-000.00. As for the Appraisal Report dated June 24, 1988, it is not a certified appraisal but, instead, it is an appraisal prepared by Mr. Martin of First Virginia Bank, as herein noted, with words written along the side stating "Walk By Inspection." Mr. Martin explained to the Court that he was on vacation in Myrtle Beach and he "did drive by and take a picture ... and that was the extent of the appraisal." (Tr. at 10, 4/4/95). The appraisal listed the property as being valued at the tax-assessed value and close to the values Mr. Kaylor represented to the Bank, which is $150,000.00.

There is no direct evidence in the record of this case as to the fair market value of the South Carolina real estate in July of 1988, the crucial date in question. The Court has before it various estimates before and after the transaction, but it would be pure speculation for the Court to determine the value of said real estate in July of 1988. Furthermore, since the Trustee has the burden of proof and has not submitted evidence as to the value of the property in July of 1988, the Court can only speculate as to whether the unsecured creditors are worse off because of the transaction. The Bank acted at arms-length in the "normal course of business" and did everything required by normal banking standards. The Trustee has not submitted any evidence to demonstrate how the transaction affected the Debtor's estate. *See In re Jeffrey Bigelow Design Group, Inc.*, 956 F.2d 479, 484 (4th Cir.1992).

Secondly, in *In re Bigelow*, the court states that the value of the transfer to a creditor is not relevant to the § 548(a)(2) inquiry; instead, it is the value of the transfer with respect to the debtor's estate which is crucial. In determining whether reasonable equivalent value is given, the Fourth Circuit has stated that "[t]he focus is on the consideration received by the debtor, not on the value given by the transferee." *See In re Bigelow Design*, at 484.

Thus, the Court holds that the Trustee has not carried the burden of proof showing that the transaction is avoidable pursuant to 11 U.S.C. § 548(a)(2); and that the Debtor was insolvent in July 1988 or became so as a result of the transfer It is so ORDERED and this Adversary Proceeding is closed.

---

4. The district court held that Kaylor did not execute the Deed of Trust in order to hinder, delay, or defraud creditors. *Id.* at 5.

APPENDIX

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF VIRGINIA ABINGDON DIVISION

Richard A. Money, Trustee, Appellant,

v.

Coastal Federal Savings & Loan, et al., Appellees.

Civil Action No. 95–0140–A

January 23, 1996

### TRUSTEE'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pursuant to order of the court, the Trustee submits the following proposed findings of fact and conclusions of law:

1.  This matter comes to the court on remand from the district court for specific findings of fact and conclusions of law with respect to the solvency or insolvency of the debtor, Sunshine Kaylor, at the time of the granting of the South Carolina deed of trust and with respect to the reasonable equivalence of the value of the note released to the value of the security obtained by the bank by virtue of the transfer. The district court directed that these issues required inquiry into "the effect of the transfer upon the debtor's estate" and "whether the unsecured creditors are made worse by the transfer" (October 18, 1995, Memorandum Opinion, p. 4). The district court further directed that the inquiry should focus on the effect of the transfer on the debtor's estate. (Memorandum Opinion, p. 5).

2.  Regarding the issues of insolvency, the court finds from the debtor's petition, Schedule A, that the total indebtedness of Sunshine Kaylor existing and outstanding prior to 1988, the year of the transfer, is $436,250.00, and that this debt was existing on July 29, 1988. The court also finds that all of Kaylor's Virginia real estate was owned as tenants by the entireties with his wife and that these properties are not answerable to his debts.

3.  The court finds that, at times material, the sole asset of the debtor to be included in the calculation of insolvency from a balance sheet prospective, as required by *Bankruptcy Code* § 101(32)(A)(ii), was his interest in the South Carolina property.

4.  The evidence of value most probative of the value of the South Carolina property at the time of the transfer is the $200,000.00 value listed in the schedules and the bank's appraisal report, which is Exhibit 6, shows a value of $156,000.00. The court finds that the value of the property at the time of transfer was $156,000.00. Subtracting the amount of the first lien held by Coastal Federal in the amount of $34,000.00 yields the debtor and his wife an equity of $122,000.00. The debtor's interest, therefore, was $61,000.00.

5.  Comparing the value of the debtor's assets with the amount of his debt, the court finds that he was insolvent at the time of the transfer.

6.  The court finds that the Casey note was held by Kaylor and his wife and that it had a balance of $10,000.00 at the time it was released to the debtor in exchange for the deed of trust on the South Carolina property. The court finds that if the bank be given credit for this consideration on the ground that it was in good faith (a finding which the trustee challenges), that the value of the transfer which the trustee seeks to recover is $56,000.00.

7.  The court has found that this transfer occurred within one year of the filing of the petition and the issue before the court is whether the debtor's estate received reasonably equivalent value for the release of the Casey note. The court finds that the debtor-in-possession and trustee, upon his succession, were, from the commencement of the case, under a duty to apply the aforesaid $56,000.00 equity to payment to the unsecured creditors. At the time of the transfer, therefore, $56,000.00 in equity was taken and depleted from the debtor's estate. The court finds and concludes that no reasonably equivalent value supported this depletion from the estate.

8.  The court finds and adjudges, therefore, that the trustee should have and recover from the bank judgment in the amount of $56,000.00 and that it should also recover

interest at the judgment rate of __% per annum from July 29, 1988, and further, that the trustee shall recover his costs herein expensed.

Respectfully, submitted this 19th day of January, 1996.

**RICHARD A. MONEY, TRUSTEE**
BY COUNSEL

WOODWARD, MILES & FLANNAGAN, P.C.
Suite 200 Executive Plaza
510 Cumberland Street
P.O. Box 789
Bristol, Virginia 24203–0789

By: /s/ John E. Kieffer
        John E. Kieffer

### CERTIFICATE OF SERVICE

I hereby certify that I have this 19th day of January, 1996, served a true copy of the foregoing on David J. Hutton, Esquire, Boucher, Hutton and Kelly, 188 East Main Street, Abingdon, Virginia 24210, by mailing to him on or before the date of filing.

/s/ John E. Kieffer
        John E. Kieffer

APPENDIX
IN THE UNITED STATES
BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

In re: Sunshine Kaylor, Debtor.

Richard A. Money, Trustee, Plaintiff,

v.

Coastal Federal Savings & Loan and First Virginia Bank–Mountain Empire, Defendants.

Chapter 7
Case No. 7–88–01834–HPA
Adversary Proceeding No. 7–91–00089

January 23, 1996

*PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW OF FIRST VIRGINIA BANK–MOUNTAIN EMPIRE*

Comes now the defendant, First Virginia Bank–Mountain Empire, by counsel, and pursuant to Order of this Court entered on October 24, 1995 submits the following proposed findings of fact and conclusions of law.

### A. FINDINGS OF FACT

1. The debtor in this case, Sunshine Kaylor, filed a Petition under Chapter 11 of the Bankruptcy Code on November 24, 1988 and the case was converted to Chapter 7 on May 14, 1992. In July of 1988, the debtor, Sunshine Kaylor, and his wife executed a deed of trust conveying property owned by them jointly in South Carolina to secure a pre-existing note payable to First Virginia Bank in exchange for the bank releasing other collateral securing said pre-existing note which was a note payable to the Kaylors in the principal amount of approximately $10,500.00.

2. That the evidence in the record as to the value of the South Carolina property includes (a) the fact that the house was purchased in 1978 for $60,000.00; (b) a tax appraisal valuing the property at $156,000.00; (c) financial statements submitted by Kaylor to First Virginia Bank indicating the value of the property to be $156,000.00; (d) an appraisal report generated by First Virginia Bank for its internal use estimating the value of the property at approximately $150,000.00; and (e) the schedules of the debtor, Sunshine Kaylor, listing the value of the property at $200,000.00; and the fact that the property sold on February 25, 1992 for $99,000.00.

3. There is no direct evidence in the record of this case as to the fair market value of the South Carolina real estate in July of 1988.

4. That absent direct evidence of an actual appraisal from a licensed appraiser as to the value of the South Carolina property in July of 1988, this Court finds that given the disparity of values represented by the evidence cited, it would be speculation for this Court to determine the value of said real estate in July of 1988.

5. There is evidence in the record that there was a first lien deed of trust on the

subject South Carolina property for the benefit of Coastal Federal Savings & Loan. However, there is no evidence in the record as to the actual balance which was due on said note secured by said first deed of trust in July of 1988, or evidence of other liens on said South Carolina property, such as real estate taxes. As a result, this Court is unable to determine the equity value in the South Carolina property in July of 1988, if any, as such a determination would be speculative.

6. That the evidence of record in this proceeding which the Court finds relevant as to the issue of insolvency of the debtor, Sunshine Kaylor, in July of 1988 include (a) information contained in the debtor's schedules; (b) a deed admitted as joint Exhibit 3 wherein the debtor, Sunshine Kaylor, individually, acquired a tract of land from Dewey Yarber, et al, by deed dated February 8, 1983, of record in the Clerk's Office of the Circuit Court of Washington County, Virginia in Deed Book 664, page 588 (however no evidence was presented as to the value of this tract of land); and the financial statements of the debtor submitted to First Virginia Bank admitted as Exhibits in this proceeding.

7. The Court finds that after a review of the debtor's schedules that the information contained therein does not provide the actual date that the debts listed therein by the debtor were incurred with any specificity. The schedules indicate that all of the unsecured debts of the debtor were incurred in 1987. As the debtor lists only the year 1987 as the date many of his debts were incurred, the Court finds that the schedules of the debtor are unreliable in determining whether or not said debts existed in July of 1988.

8. That a determination of the value of the real estate owned individually by Sunshine Kaylor acquired by deed dated February 3, 1983 cannot be made as no evidence was presented with respect thereto.

9. That the evidence in the record is insufficient for the Court to determine without speculation that the debtor, Sunshine Kaylor, was insolvent in July of 1988 or became insolvent as a result of the transfer.

10. The Court finds that based upon all of the evidence presented and considered as set forth herein, that the debtor received reasonably equivalent value in exchange for the transfer of his interest in the South Carolina property by the July, 1988 deed of trust for the benefit of First Virginia Bank when the debtor received a release of the Casey note by said bank which previously was collateral on the existing indebtedness to said bank. This finding results as the Court cannot determine from the evidence of record in this proceeding the amount of equity, if any, that existed in the South Carolina property which would have been an asset of this debtor's estate depleted by said transfer in July of 1988. The debtor pledged collateral of a value which cannot be determined, absent speculation, in exchange for the release of previously existing collateral.

## B. CONCLUSIONS OF LAW

1. The trustee has the burden of proving by preponderance of the evidence that the debtor received less than the reasonably equivalent value of the transferred South Carolina property, and that the debtor was insolvent on the date of the transfer or became insolvent as a result of said transfer. *In Re Morris*, 914 F.2d 458 (4th Cir.1990).

2. That the trustee has failed to meet its burden of proof in this proceeding as the trustee has failed to present sufficient evidence for this Court to determine, without speculation, the fair market value as of the date of transfer of the South Carolina property transferred by deed of trust in July of 1988.

3. In addition, the trustee has failed to meet its burden as the evidence is insufficient for this Court to determine that reasonably equivalent value was not given for said transfer as there is insufficient evidence in the record to determine the amount of indebtedness or other liens which may have existed against the South Carolina property in July of 1988 to determine the amount of equity which the debtor, Sunshine Kaylor, had in said property on the date of transfer,

which is necessary to determine the effect said transfer had on the debtor's estate.

4. That given the Court's determinations and conclusions as previously set forth herein, it is unnecessary for the Court to determine whether or not the debtor, Sunshine Kaylor, was insolvent in July of 1988 or became insolvent as a result of said transfer. However, based upon this Court's findings that the schedules themselves were insufficient to make such a determination, this Court concludes that the trustee has failed to meet its burden of proof by failing to present evidence sufficient for this Court to determine that the debtor was, in fact, insolvent in July of 1988 at the time of said transfer, or in fact became insolvent as a result of said transfer.

5. That judgment be entered in favor of First Virginia Bank in this proceeding and said bank shall be entitled to apply the balance of funds held from the sale of the South Carolina property to existing indebtedness of the debtor, Sunshine Kaylor.

Respectfully submitted,

FIRST VIRGINIA BANK–MOUNTAIN EMPIRE

By Counsel

BOUCHER, HUTTON and KELLY
188 East Main Street
Abingdon, Virginia 24210

By /s/ David J. Hutton

David J. Hutton

### CERTIFICATE

I certify that a true copy of the foregoing Proposed Findings of Fact and Conclusions of Law was faxed to John E. Kieffer, Esq., counsel for trustee, this 22nd day of January, 1996.

/s/ David J. Hutton
David J. Hutton