TIMBERS, Circuit Judge:
 

 Richard J. Briden (“appellant”) appeals from an order entered April 19, 1985 in the District of Massachusetts, Andrew A. Caf-frey,
 
 Chief Judge,
 
 dismissing an appeal from a judgment of the bankruptcy court, James N. Gabriel,
 
 Bankruptcy Judge,
 
 entered August 12, 1983, and affirming the bankruptcy court’s holding that appellant was liable to the estate of Arrowhead Gardens, Inc. (“debtor”) for certain preferential transfers made by the debtor to appellant in an action brought by the debtor’s trustee (“appellee”). On appeal, appellant contends that the district court’s application of the clearly erroneous standard in reviewing the bankruptcy court’s findings of fact was unconstitutional and that the bankruptcy court’s findings with respect to the debtor’s insolvency and appellant’s awareness of that insolvency are not supported by the evidence. We hold that applying the clearly erroneous standard to a bankruptcy court’s findings of fact in a core proceeding is constitutional and that the bankruptcy court’s findings in this case are not clearly erroneous. We affirm.
 

 I.
 

 Most of the pertinent facts were stipulated to by the parties. We shall summarize those facts believed necessary to an understanding of the issues raised on appeal.
 

 Appellant is the sole shareholder and chief executive officer of the debtor. The debtor was engaged in the wholesale and retail plant nursery business. In February 1978 appellant loaned the debtor $112,968 without a promissory note, interest or a repayment schedule. On April 2, 1979 the debtor sold all of the assets of its retail business to an unrelated company for $225,000. The debtor continued to operate its wholesale business. During March 1979 the debtor made various small repayments to appellant totaling $12,637.35. On April 13, 1979 the debtor gave appellant $45,000 from the sale of the retail business pro
 
 *381
 
 ceeds as an additional repayment on account of the loan.
 

 About this time, the debtor’s wholesale business, which had been declining for a year, took a sharp downturn. Forecasts of strong Spring 1979 sales did not materialize. By July 1979 the debtor could no longer pay its bills as they came due. Finally, on October 24, 1979 some of the debtor’s creditors filed an involuntary bankruptcy petition against the debtor under Chapter 7, 11 U.S.C. §§ 701-766 (Supp. V 1981).
 
 [1]
 
 Appellee was appointed trustee on November 15, 1979. She filed the instant adversary action against appellant in the bankruptcy court on May 21, 1981.
 

 Appellee’s action sought to recover the $57,637.35 in loan repayments made to appellant, an insider, within a year of the filing of the petition as voidable preferential transfers under 11 U.S.C. § 547(b) (Supp. Y 1981). The parties stipulated or did not dispute that: (1) appellant was an insider within the meaning of 11 U.S.C. § 101(25) (Supp. V 1981);
 
 [2]
 
 (2) appellant was a creditor of the estate; (3) appellant received $57,637.35 on account of antece-dant indebtedness within a year of the filing of the petition; and (4) that amount was more than appellant would have received as a general creditor of the estate. The only issues before the bankruptcy court were whether the. debtor was insolvent at the time of the transfers and whether appellant had reasonable cause to believe that the debtor was insolvent at the time of the transfers.
 
 [3]
 

 The bankruptcy court found both that the debtor was insolvent at the time of the transfers and that appellant had reasonable cause to believe that the debtor was insolvent. On appeal to the district court, Chief Judge Caffrey held that the bankruptcy court’s findings were not clearly erroneous and dismissed the appeal. The instant appeal to this Court followed.
 

 II.
 

 Appellant’s first claim is that the clearly erroneous standard as applied by the district court to the bankruptcy court’s findings of fact violated Article III of the United States Constitution. Appellant failed to raise this issue before the district court and it therefore is not properly before our Court. In the interest of economy of judicial time, however, we point out that Bankruptcy Rules 7052 and 8013, which require the application of the clearly erroneous standard to a bankruptcy court’s findings of fact, are constitutional as applied to core proceedings like the instant case in which debtor-creditor relations are restructured. The Supreme Court’s decision in
 
 Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50 (1982), casts no doubt on this conclusion.
 
 Marathon
 
 concerned only the constitutionality of non-Article III judges deciding related private right actions in bankruptcy proceedings. The Court was careful to exclude core proceedings like the instant one from its holding.
 
 Id.
 
 at 71 (opinion of Brennan, J.). It is perfectly permissible for a core proceeding with respect to a public right to be decided in a legislative court.
 
 See id.
 
 We hold that appellant’s claim is meritless.
 
 See In re Shop-N-Go of Maine, Inc.,
 
 38 B.R. 731 (D.Maine 1984) (clearly erroneous standard is constitutional when applied to bankruptcy court’s findings of fact in core proceedings).
 

 III.
 

 Appellant’s other claims simply dispute the bankruptcy court’s findings with re
 
 *382
 
 spect to the debtor’s insolvency and appellant’s awareness of that insolvency. We find these claims to be wholly devoid of merit.
 

 First, it is clear in this Circuit that determinations of insolvency and a creditor’s reasonable cause to believe in that insolvency are reviewed as findings of fact.
 
 Constructora Maza, Inc. v. Banco de Ponce,
 
 616 F.2d 573, 576 (1st Cir.1980).
 
 [4]
 
 The clearly erroneous standard of review therefore applies to these findings. Bankruptcy Rules 7052, 8013.
 

 Appellant asserts that the bankruptcy court’s finding that the debtor was insolvent at the time of the transfers is unsupported by the evidence. Insolvency is defined by the Bankruptcy Code as an entity’s “financial condition such that the sum of such entity’s debts is greater than all of such entity’s properties, at fair valuation ...”. 11 U.S.C. § 101(26) (Supp. V 1981).
 
 [5]
 
 This balance sheet test focuses on the fair market value of the debtor’s assets and liabilities within a reasonable time of the transfers. Asset valuation need not be exact. Assets should be reduced by the value of the assets not readily susceptible to liquidation and the payment of debts.
 
 Banco de Ponce, supra,
 
 616 F.2d at 577.
 

 The court based its finding of insolvency on its analysis of the debtor’s balance sheet dated April 30, 1979. That unaudited balance sheet was prepared by appellant in July 1981 and was revised in June 1982. It showed assets of $284,349.31 and liabilities of $245,417.45 (excluding shareholder’s equity). The bankruptcy court, however, found this balance sheet to be inaccurate in many material respects. The most important of these findings that appellant challenges is that the debtor’s April 30, 1979 inventory figure was overstated by $92,000. This finding is amply supported by the record. The April 30, 1979 inventory figure of $182,000 was not based on a physical count. The August 30, 1979 inventory figure was down to $40,000 without a corresponding amount of sales. In fact, there was a $92,000 discrepancy. Appellee called an expert witness who testified to three possible causes for the discrepancy: (1) sales at less than normal prices; (2) throwing away inventory; or (3) an, overvaluation of the April 30, 1979 inventory figure. Appellant testified that he thought the discrepancy was the result of the first two possible causes stated above. The bankruptcy court found this evidence incredible, especially when coupled with the fact that the debtor’s inventory figures had not changed for the five months preceding April 1979. This finding is not clearly erroneous. Indeed, the clearly erroneous standard was designed to insulate just such findings — ones that are based,
 
 inter alia,
 
 on weighing the credibility of witnesses.
 

 Once the $92,000 is removed from the asset side of the debtor’s balance sheet, it is clear that the debtor was insolvent as of April 30, 1979.
 
 [6]
 
 Under § 547(b) the debtor must be insolvent at the time of the transfers. Appellant admitted, however, that the debtor’s financial condition did not change from April 1 to April 30. It is clear, therefore, that the debtor was insolvent with respect to a majority of the transfers. As for the March transfers, the bankruptcy court used retrojection to infer that the debtor was insolvent then also. We expressly approved the use of this technique in
 
 Hassan v. Middlesex National Bank,
 
 333 F.2d 838 (1st Cir.),
 
 cert. denied,
 
 
 *383
 
 379 U.S. 932 (1964). In view of the slow state of the debtor’s business in March 1979, we see no reason for not using retro-jeetion here.
 

 We hold that the bankruptcy court’s finding that the debtor was insolvent at the time of the transfers is not clearly erroneous.
 

 Appellant also claims that the bankruptcy court’s finding that appellant had reasonable cause to believe that the debtor was insolvent is not supported by the evidence. To satisfy this requirement of § 547(b), all that is needed is a showing by the trustee of facts relevant to the debtor’s financial condition known or ascertainable by the creditor that would lead a prudent businessman to conclude that the debtor wás insolvent.
 
 Banco de Ponce, supra,
 
 616 F.2d at 578.
 

 Appellant was the controlling officer of the debtor. He actively oversaw all of the debtor’s financial transactions during the period in question. Appellant also was responsible for preparing all of the debtor’s financial records, including sales projections and actual sales figures. The record is replete with evidence that appellant had not only reasonable cause to believe, but actual knowledge of, the debtor’s insolvency.
 

 We hold that the bankruptcy court’s finding that appellant had reasonable cause to believe that the debtor was insolvent at the time of the transfers is not clearly erroneous.
 

 IY.
 

 To summarize: We hold that the district court was correct in applying the clearly erroneous standard of review to the bankruptcy court’s findings of fact and that none of those findings is clearly erroneous. We therefore affirm the order of the district court dismissing appellant’s appeal from the judgment of the bankruptcy court.
 

 Affirmed.
 

 [1]
 

 . United States Code citations are to the sections in effect when the instant action was brought.
 

 [2]
 

 . Currently, 11 U.S.C. § 101(28) (1982),
 
 amended by
 
 Pub.L. 98-353 § 421(j)(2) (1984).
 

 [3]
 

 . The requirement that the creditor have reasonable cause to believe that the debtor was insolvent at the time of the transfers was eliminated by Congress in the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98-353 § 462(b)(2). This change applies only to cases filed 90 days after July 10, 1984. Pub.L. 98-353 § 553 (1984).
 

 [4]
 

 .
 
 Cf. In re Roco Corp.,
 
 701 F.2d 978, 981-82 (1st Cir.1983) (insolvency may be a mixed question of law and fact);
 
 see also Foggs v. Block,
 
 722 F.2d 933, 938 (1st Cir.1983) (mixed questions of law and facts are reviewed under the clearly erroneous standard),
 
 rev'd on other grounds sub nom. Atkins v. Parker,
 
 — U.S.-, 105 S.Ct. 2520 (1985).
 

 [5]
 

 . Currently 11 U.S.C. § 101(29) (1982),
 
 amended by
 
 Pub.L. 98-353 § 421(j)(2) (1984).
 

 [6]
 

 .Appellant also challenges the bankruptcy court's finding that the debtor's liabilities were understated by $27,346. We do not need to address this contention because, even assuming the liabilities were not understated, the debtor still would be insolvent by virtue of the inventory overstatement alone.