In re WASHINGTON BANCORPO-
RATION, Debtor-in-Possession.

WASHINGTON BANCORPORATION,
Plaintiff,

v.

Luther H. HODGES, Jr., Defendant.

Bankruptcy No. 90–00597.
Adv. No. A94–0100.

United States Bankruptcy Court,
District of Columbia.

Jan. 10, 1995.

Richard Lucas, Washington, DC, for plaintiff.

Bernhardt K. Wruble, Washington, DC, for defendant.

## DECISION ON MOTION FOR SUMMARY JUDGMENT

S. MARTIN TEEL, Jr., Bankruptcy Judge.

In this adversary proceeding, the debtor, Washington Bancorporation ("WBC"), seeks

to recover a $1.47 million payment ("Payment") made to the defendant, Luther H. Hodges, Jr. ("Hodges"), by way of a preference or fraudulent conveyance action. Under the court's consideration is the defendant's motion for summary judgment. For reasons explained below, the motion for summary judgment will be granted.

## BACKGROUND FACTS

Hodges was employed by WBC and the National Bank of Washington ("NBW"), WBC's wholly owned subsidiary, as their Chief Executive Officer and Chairman of the Board from September 17, 1987, to January 30, 1990, pursuant to an employment agreement ("Employment Agreement"). Section 11(a) of the Employment Agreement specified that if Hodges' employment were terminated within six months following a "Change in Control," he would be entitled to a payment equal to three times his base compensation and any annual bonus he received in the preceding year. This Payment has been referred to by the parties as the "Golden Parachute Payment."

On January 30, 1990, Hodges resigned, which according to an agreement between the parties was considered a "Change in Control," triggering the Payment under the Employment Agreement.[1] Hodges' base salary at the time of his resignation was $400,-000 and his bonus from the proceeding year totalled $90,000. Accordingly, Hodges' Payment under the Employment Agreement totalled $1,470,000, or three times $490,000. The Payment was made to Hodges on February 2, 1990. On May 7, 1990, WBC defaulted on $36 million of commercial paper. WBC filed its chapter 11 petition on August 1, 1990, approximately six months after the Payment. On August 10, 1990, the Comptroller of the Currency declared NBW insolvent and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver, which seized all of WBC's records. In December 1990 WBC filed a "SUMMARY OF DEBTS AND PROPERTY" revealing an insolvency at petition in excess of $31 million.

On August 17, 1994, WBC commenced this action seeking to recover the Payment from Hodges as a preferential transfer under § 547 of the Bankruptcy Code or a fraudulent conveyance under § 548. Hodges has moved for summary judgment and sanctions under F.R.Bankr.P. 9011.

## DISCUSSION

### A. Summary Judgment

The standard for summary judgment under Rule 56, incorporated into Bankruptcy Rule 7056, is for the movant to show that based on the pleadings "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c). The burden on the moving party who, as in this case, does not bear the burden of proof at trial "may be discharged by 'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If, also as in this case, the movant is alleging the nonmoving party lacks proof to establish requisite elements of its case, the movant must show the absence of such facts. *Id.*

Once the movant makes a properly supported motion, the burden shifts to the nonmovant to demonstrate the existence of a genuine dispute. Under Rule 56(e),

> an adverse party may not rest upon the mere allegations or denials or the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The court must deny summary judgment where there is a genuine issue as to any material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

---

1. In an April 12, 1989, Settlement Agreement approved by Judge Royce Lamberth of the United States District Court for the District of Columbia in *WBC v. Said, et al.,* No. 88–311 (RCL) (D.D.C.), Hodges agreed to resign his position as Chairman and CEO of WBC and NBW unless certain specified events occurred, which did not subsequently occur. The Settlement Agreement provided, as well, that the resignation would be considered a Change in Control.

In deciding summary judgment motions, the court must view the nonmovant's evidence in a light most favorable to the non-movant's position and draw inferences in favor of the nonmovant, provided such inferences are justifiable or reasonable. *Matsushita Electric Industrial Co., Inc. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Where the court is faced with two plausible but competing inferences, the court should grant summary judgment to the movant defendant when there is no reasonable evidentiary basis for drawing the inference beneficial to the nonmovant plaintiff. In essence, where the plaintiff's evidence is sufficient for the jury to adopt an inference beneficial to the plaintiff under the preponderance standard, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Conversely, however, if the court finds the plaintiff's evidence insufficient to support a jury adopting an inference in the plaintiff's favor under the preponderance standard, then summary judgment should be granted in favor of the defendant. *Id.*

B. Preference and Fraudulent Conveyance

■ In Count I, the plaintiff seeks to avoid and recover the Payment to Hodges as a voidable preference under § 547(b). Alternatively, in Count II, the plaintiff seeks to recover the Payment on the grounds that because WBC received less than equivalent value in exchange for the Payment, the Payment is avoidable as a fraudulent transfer under § 548(a)(2)(A). Hodges argues in his motion for summary judgment that the plaintiff has failed to establish two elements necessary for both the preference action and the fraudulent conveyance action. Specifically, Hodges argues that WBC did not make the Payment to Hodges and that even if WBC did make the Payment, WBC was not insol-

vent at the time. The debtor bears the burden of proving by a fair preponderance of the evidence every controverted element of a preference or fraud action. *See In re Robinson Bros. Drilling Inc.*, 9 F.3d 871 (10th Cir.1993); *In re Minnesota Utility Contracting Inc.*, 110 B.R. 414 (D.Minn.1990).

Because the court agrees with the defendant that the plaintiff has failed to meet its burden on whether WBC was insolvent when the Payment was made, the court considers the insolvency element first.[2]

1. *Insolvency*

■ The parties dispute whether the debtor, WBC, was insolvent on February 2, 1990, when the Payment was made to Hodges. WBC's insolvency is relevant because under §§ 547(b)(3) and 548(a)(2)(B)(i), the debtor must be insolvent at the time the payment was made (or under § 548(a)(2)(B)(i) be made insolvent as a result of the payment) in order to avoid the payment as a preference or fraudulent conveyance.[3] Under § 101(32) insolvency is defined by the Bankruptcy Code as a

> ... financial condition such that the sum of such entity's debts is greater than all of such entity's property, at fair valuation....

11 U.S.C. § 101(32). Section 101(32) requires a "balance sheet test focuss[ing] on the fair market value of the debtor's assets and liabilities within a reasonable time of the transfer." *Briden v. Foley*, 776 F.2d 379, 382 (1st Cir.1985).

Neither party has provided the court with WBC's financial information from the month in question. That information remains in the FDIC's possession. WBC's only evidence that WBC was insolvent on February 2 is the affidavit of Michael F. Ryan, WBC's "former president and current liquidating supervi-

---

2. Plaintiff has made a motion for continuance under F.R.Civ.P. 56(f) to allow more time for discovery on the issue of whether WBC made the payment to Hodges. This continuance request does not, however, concern the issue of whether WBC was insolvent at the time the Payment was made. Accordingly, the court need not consider the plaintiff's Rule 56(f) motion when addressing the sufficiency of the plaintiff's evidence of insolvency.

3. The presumption under § 547(f) that "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition" is not relevant in this case because the Payment was made six months before the petition was filed.

sor," in which he states that WBC was insolvent by $32 million six months later on the date of the petition based on its "Official Form No. 6" schedule of assets and liabilities filed in December, 1990.[4] WBC then infers from the sizable $32 million deficit existing in August that WBC must have been insolvent six months earlier. WBC supports this inference with Ryan's statement that he has "no reason to believe that WBC's financial position was materially better on February 2, 1990 than it was on the date Official Form No. 6 was filed with this Court." Hodges disputes WBC's inference of insolvency, pointing to WBC's 1989 annual report demonstrating WBC was solvent as of December 31, 1989. The defendant argues that the precipitous drop into insolvency over the months following the payment is explainable by a run on WBC by depositors following the default on May 7, 1990.

The court is faced with the question of competing inferences. WBC contends that the sizable insolvency upon the filing of the petition in August 1990 supports an inference that WBC was insolvent six months earlier when the Payment was made. Conversely, the defendant claims that WBC's financial statement showing WBC as solvent on December 31, 1989, supports the inference that WBC was solvent when it made the payment two months later in February 1990. As explained above, the first question the court must answer at the summary judgment stage is whether the movant defendant has met his burden to show that there is an absence of evidence to support the nonmovant plaintiff's case. *See Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553–54. The court concludes that the movant has met his burden in this regard.

Concerning the financial state of the debtor when the Payment was made, the plaintiff provided no evidence from that date to address whether the debtor was then insolvent. Furthermore, the defendant has put forward evidence of WBC's solvency two months prior to the payment. The burden thus shifts to the plaintiff to set forth specific facts showing that there is a genuine issue for trial. *See* F.R.Bankr.P. 7056. Essentially, the question the court must now answer is whether the plaintiff's proffered evidence of insolvency is sufficient to support a jury adopting the inference that WBC was insolvent when the payment was made. The court concludes it is not.

█ The plaintiff contends that proof of insolvency in August 1990, is sufficient to demonstrate insolvency on the date of the Payment on February 2, 1990, six months earlier. Inferring insolvency over a period of time from a proven date of insolvency has been referred to by some courts as "retrojection." *See Briden v. Foley*, 776 F.2d at 382. This court, along with other courts looking at the question of retrojection, has held that evidence of insolvency on a date significantly distant in time from the date of the transfer, without more evidence, is insufficient to support a finding of insolvency on the date of the transfer. *See In re Auto–Pak, Inc.*, 55 B.R. 403, 405 (Bankr.D.D.C.1985) (evidence of insolvency at petition is insufficient to support a finding of insolvency 105 days prior); *In re War Eagle Floats*, 104 B.R. 398, 400 (Bankr. E.D.Okl.1989) (balance sheets filed reflecting insolvency of debtor six months prior to date of transfer did not establish insolvency of corporation at date of transfer). The courts reason that traditional business fluctuations

---

4. The court notes that WBC's characterization of Ryan's affidavit regarding the date when WBC was insolvent is inconsistent with Ryan's affidavit. WBC stated in its brief that Ryan maintained that "Michael F. Ryan ... states unequivocally in his attached declaration that the amount of WBC's liabilities on August 1, 1990, the date on which WBC filed it Chapter 11 petition, exceeded the fair market value of its assets by some $32 million." WBC's Oppos. to Def. Summ. J. at 11–12. WBC then concludes that the date of the Payment is only six months prior to the insolvency. However, Ryan's affidavit never refers to the August filing date. Rather, he refers to WBC being insolvent "[i]n December

1990 ..." when WBC filed its Official Form No. 6. Ryan Aff. at 4. Ryan then draws a comparison between WBC's financial state on the February 2, 1990 date of the Payment and WBC's financial condition "on the date Official Form No. 6 was filed with the Court," which was in December. WBC may be concluding that because Ryan is basing his conclusion on the Form No. 6 which is normally prepared with financial data from the petition date, that he must be referring to the financial state of WBC at petition. However, that is not what Ryan states in his affidavit. Nonetheless, for purposes of this motion the court will accept the plaintiff's characterization.

make it impossible to draw any inferences over a period any longer than just a few months. *See In re War Eagle Floats*, 104 B.R. at 400 ("six months is simply too long a period considering the strict requirements of § 548(a)(2) specifically necessitating evidence of insolvency on the date of the transfer at issue.").

■ The courts will only consider retrojection if the evidence of insolvency on the certain date is accompanied by evidence that the debtors financial condition did not change during the pendency period between the time of the payment and the date of proven insolvency. *See Briden v. Foley*, 776 F.2d at 382–83 (evidence of slow state of debtor's business sufficient to infer continual insolvency over one month period); *In re Damason Const. Corp.*, 101 B.R. 775, 778 (Bankr. M.D.Fla.1989) (evidence indicating no transfers during prior year and no change in debtor's financial condition over three month period sufficient to infer continual insolvency over three month period); *In re Lemanski*, 56 B.R. 981, 989 (Bankr.W.D.Wis.1986); *In re Kaylor Equip. & Rental, Inc.*, 56 B.R. 58, 62 (Bankr.E.D.Tenn.1985) (avoidance disallowed where no proof that there had been no substantial change in debtor's financial condition in the interim period); *In re Uhlmeyer*, 67 B.R. 977, 980 (Bankr.D.Ariz.1986); *In re Nacol*, 36 B.R. 566, 569 (Bankr.M.D.Fla.1983) (evidence indicating no "radical change in [the debtor's] financial condition since the date of transfer" sufficient to infer continual insolvency over three month period).

In the present case the debtor has provided no evidence that the debtor's financial position was unchanged in the six month interim period between the Payment in February and petition date in August. A jury could give no weight to the noncommittal statement by Mr. Ryan that he has "no reason to believe that WBC's financial position was materially better on February 2, 1990 than it was on the date Official Form No. 6 was filed with this Court." Mr. Ryan's current position as the liquidation supervisor would give him no personal knowledge of the financial condition of the debtor prior to the petition. Furthermore, the plaintiff provided no evidence that Mr. Ryan's former position

as WBC's president provided him with any financial information during the six month period in question. It is not even clear when Ryan was president of WBC. The defendant has suggested that Ryan did not join WBC until mid-May 1990, which would limit his perspective to the last three months of the six month period in question. In short, the evidence provided by the plaintiff is insufficient to support a finding that the debtor's finances were static during this period.

Indeed, the evidence presented suggests a contrary picture, with the debtor riding a financial roller coaster and eventually plunging into insolvency sometime in 1990. A chronicle of the events is helpful to demonstrate how unsettled 1990 was for WBC. The defendant provided evidence that WBC began the year solvent as demonstrated by their financial report on December 31, 1989, which was a month and two days before the Payment. On May 7, three months after the Payment, WBC defaulted on its commercial paper, leaving unpaid the holders of approximately $36 million of such paper and prompting the filing of a lawsuit by the noteholders. Then, on August 2, 1990, the debtors filed bankruptcy. Schedules filed in December 1990 indicate an insolvency at petition in excess of $31 million. It is impossible for the court to infer from these facts that WBC's financial condition was unchanged during the six months following the Payment.

If the debtor was grossly insolvent on the petition date, it may be inferred that it was insolvent on some earlier date preceding the petition date. But that inference cannot carry the plaintiff's day when applied to a payment made one day shy of six months before the petition date. Some concrete evidence showing a lack of change in circumstances must be presented and none has been. Indeed, there is evidence the debtor was solvent one month and two days before the Payment. No evidence has been presented whereby a jury could reasonably infer that the insolvency arose before the Payment. That is entirely a matter of speculation—a case of inferring that the debtor was solvent or insolvent—and that does not suffice to let the case go to the jury. *See James v. Otis Elevator Co.*, 854 F.2d 429, 432 n. 3 (11th

Cir.1988) ("a fact that can only be decided by a coin toss ... cannot be submitted to the jury.").

Accordingly, the court concludes that the plaintiff's evidence of insolvency is insufficient to support a jury adopting the inference that WBC was insolvent when the Payment was made. Thus, summary judgment in favor of the defendant is appropriate.

### 2. *Source of Payment*

Finally, the parties also dispute whether the Payment to Hodges was made by WBC or by NBW. This is relevant because, although the court has already granted summary judgment to the defendant, the defendant has also moved for sanctions under F.R.Bankr.P. 9011 on the grounds that the plaintiff had insufficient evidence to go forward on the claim that WBC made the payment to Hodges. Under §§ 547(b) and 548(a), the debtor must have made the payment in order to avoid it as a preference or fraudulent conveyance.

■ Under the arrangement between WBC and NBW, although all payments made by either WBC or NBW were physically made by NBW, those payments were made by NBW *on behalf* of either NBW or WBC. The source account for a payment determines on whose behalf it was made. WBC claims that the Payment to Hodges was sourced from a WBC account and so was a payment on behalf of WBC and not NBW. The major piece of evidence WBC has for the assertion that WBC made the Payment is a Form 8–K filed with the United States Securities and Exchange Commission ("SEC") on February 12, 1990, describing the payment to Hodges and listing the "REGISTRANT-NAME" as "Washington Bancorp." and the "COMMISSION FILE NO." as "0–12483." The other evidence proffered by WBC is of a circumstantial nature, indicating that WBC *could have* made the payment. WBC cites the fact that Hodges' Employment Agreement, under which both WBC and NBW were obligated to make the Payment, was approved by WBC's board of directors.

In his summary judgment motion and motion for Rule 9011 sanctions, counsel for Hodges disputes the sufficiency of the debtor's evidence supporting its assertion that the Payment was made on behalf of WBC. Hodges contends that the Form 8–K filed with the SEC was a consolidated statement filed on behalf of both WBC and NBW under WBC's name. Therefore, Hodges argues that the court should draw no definitive conclusions based on the Form 8–K. Further, Hodges provides evidence, contrary to WBC's position, tending to indicate that NBW made the Payment on its own behalf and not on behalf of WBC.

In response to Hodges' summary judgment motion, counsel for WBC has made a motion requesting the court grant a continuance to allow more time for discovery under F.R.Civ.P. 56(f). WBC conceded that it would promptly move to dismiss its action if it found conclusive evidence contrary to its position that WBC made the payment. In support of his motion, counsel for WBC has submitted an affidavit, in which he states that he has been attempting unsuccessfully since June 29, 1994, to obtain access to WBC's accounting records held by the FDIC, which he contends could establish conclusively whether WBC made the Payment.

In opposition to the plaintiff's Rule 56(f) request, the defendant contends that counsel for WBC has not diligently pursued discovery in this case, which was filed four years after the bankruptcy petition. The defendant argues that the plaintiff should not now be permitted to seek discovery for evidence that should have been sought in preparation of filing this case. The court does not decide the Rule 56(f) motion because it is unnecessary to do so.

The court declines to rule on the sanctions issue at this time because the plaintiff has not briefed the sanctions question and has not had an opportunity to put forward any evidence of reasonable investigation. WBC had proof that WBC or NBW made the payment but has not articulated why it had to file this complaint before ascertaining which entity made the payment.

Accordingly, the court will grant the defendant's motion for summary judgment and await further briefing on the sanctions issue.