*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to
6th Cir. BAP LBR 8024-1(b).  See also 6th Cir. BAP LBR 8014-1(c).*

File Name: 19b0002n.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

---

IN RE:  CARLA RENEA SCARBROUGH,

*Debtor*.

---

SUSAN R. LIMOR, Trustee,

*Plaintiff-Appellee*,

*v*.

MICHELLE LEE ANDERSON,

*Defendant-Appellant*.

No. 18-8028

---

Appeal from the United States Bankruptcy Court
for the Middle District of Tennessee at Nashville.
No. 3:15-bk-03894; Adv. No. 3:17-ap-90076—Marian F. Harrison, Judge.

Decided and Filed:  March 28, 2019

Before: BUCHANAN, DALES and OPPERMAN, Bankruptcy Appellate Panel Judges.

---

**COUNSEL**

**ON BRIEF:**  Steven L. Lefkovitz, LEFKOVITZ & LEFKOVITZ, Nashville, Tennessee, for
Appellant.  Erica R. Johnson, LIMOR & JOHNSON, Nashville, Tennessee, for Appellee.

---

**OPINION**

---

SCOTT W. DALES, Bankruptcy Appellate Panel Judge.  This appeal emanates from an
adversary proceeding to avoid constructively fraudulent transfers, and the bankruptcy court's
entry of summary judgment in favor of the plaintiff trustee.  The appeal questions the court's

ruling on a single issue: whether the summary judgment record included evidence sufficient to require a finding that the debtor was insolvent at the time of the transfers.

The Appellant in this case, Michelle Anderson ("Ms. Anderson" or the "Appellant"), is the defendant in the adversary proceeding brought by Susan R. Limor, a chapter 7 trustee (the "Trustee"). Pursuant to the parties' stipulation to resolve the dispute on summary judgment motions, the Trustee filed such a motion. After two hearings, the bankruptcy court entered summary judgment in favor of the Trustee, finding that she met all the elements necessary to avoid (and recover) the transfers as constructively fraudulent. Ms. Anderson now appeals from that summary judgment.

## ISSUE ON APPEAL

Whether the bankruptcy court erred in finding that Carla Scarbrough (the "Debtor") was insolvent on the date of the transfers, when the court's insolvency calculation included only those assets received by the Debtor in exchange for the transfer and the Debtor's bankruptcy schedules filed over a year later.[1]

## JURISDICTION AND STANDARD OF REVIEW

The United States District Court for the Middle District of Tennessee has authorized appeals to the Panel and no party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1). Ms. Anderson timely filed a notice of appeal.

The Bankruptcy Appellate Panel has jurisdiction to review: (i) final judgments and orders arising from a bankruptcy proceeding; and (ii) interlocutory orders (only with leave of the court). 28 U.S.C. § 158(a)(1)–(3). A judgment resolving all issues in an adversary proceeding is the

---

[1]The Appellant framed the issues as: "1) Whether the Bankruptcy Court erred in finding that the Debtor was insolvent at the time of any transfers between the Debtor and the Defendant without proof of insolvency presented? 2) Whether the Debtor was insolvent at the time of the transfers between the Debtor and the Defendant?" Appellant Br. at 15, Case No. 18-8028 ECF No. 10. Although the Appellant's statement of issues questions the insolvency of the Debtor at the time of two transfers — one on April 16, 2014 and the other on April 28, 2015, the body of the Appellants' brief only argues and discusses the Debtor's insolvency at the time of the first transfer on April 16, 2014. Thus, the Panel deems the insolvency question regarding the April 28, 2015 transfer as abandoned. *Hih v. Lynch*, 812 F.3d 551, 556 (6th Cir. 2016) ("An appellant abandons issues not raised and argued in his initial brief on appeal.")

quintessential example of a final judgment from which an immediate appeal as of right lies under 28 U.S.C. § 158(a)(1).  The adversary case is a discrete proceeding, and the judgment appealed from leaves nothing for the trial court to do but supervise its execution.  *See Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989); *Ritzen Grp., Inc. v. Jackson Masonry, LLC* (*In re Jackson Masonry, LLC*), 906 F.3d 494, 497–98 (6th Cir. 2018).  Accordingly, the Panel has appellate jurisdiction to review the final judgment entered against Ms. Anderson.

The Panel will review the bankruptcy court's decision granting summary judgment *de novo*, notwithstanding the Trustee's concession on appeal that a more deferential standard applies to findings of fact.  This is because Rule 56 precludes findings of fact at the summary judgment stage, limiting the trial court's task to simply identifying whether a genuine issue of material fact exists for trial.  *Gold v. FedEx Freight East, Inc.* (*In re Rodriguez*), 487 F.3d 1001, 1007 (6th Cir. 2007); *West v. AK Steel Corp.*, 484 F.3d 395, 402 (6th Cir. 2007); *Tatis v. U.S. Bancorp*, 473 F.3d 672, 674 (6th Cir. 2007).  "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination."  *Mettinger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007).

"The substantive law determines which facts are 'material' for summary judgment purposes."  *Hanover Ins. Co. v. Am. Eng'g Co.*, 33 F.3d 727, 730 (6th Cir. 1994) (citations omitted).  Whether the debtor was insolvent or rendered insolvent is an essential element in a fraudulent transfer cause of action.  As such, it is material in that it will affect the determination of the underlying action.  *Tenn. Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1996).  An issue is genuine if a rational trier of fact could find in favor of either party on the issue.  *Schaffer v. A.O. Smith Harvestore Prods., Inc.*, 74 F.3d 722, 727 (6th Cir. 1996) (citation omitted).

The Trustee, as the plaintiff in this action, bears the burden of proof at trial.  *Silagy v. Gagnon* (*In re Gabor*), 280 B.R. 149, 155 (Bankr. N.D. Ohio 2002) ("Trustee bears the initial burden of proof, by preponderance of the evidence, on her fraudulent transfer claim.").  In such cases, "the moving party's initial summary judgment burden is 'higher in that it must show that

the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (quoting 11 James William Moore et al., Moore's Federal Practice § 56.13[1], at 56–138 (3d ed. 2000)). Because a bankruptcy court does not usually conduct jury trials, perhaps a better way to describe the summary judgment analysis in bankruptcy proceedings is to say that when the moving party bears the burden of proof at trial, she must make a *prima facie* case strong enough to justify depriving the other party of her day in court. Depending on who bears the burden of proof on a material issue, the moving party can make this showing by using deposition testimony and affidavits; offering documentary evidence that would be admissible at trial; and/or pointing the court to facts in the record that otherwise preclude judgment for the non-moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986).

In addition, at the summary judgment stage the court cannot draw inferences in favor of the moving party to make her case. Instead, when considering a summary judgment motion the court must view the evidence and draw all reasonable inferences in favor of the non-moving party, here Ms. Anderson. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S. Ct. 2505, 2512 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

In the familiar trio of summary judgment decisions just cited, the Supreme Court has analogized a motion for summary judgment to a motion for directed verdict, because both remove the trial of factual questions from the finder of fact. If the movant under Rule 56 presents evidence that, if not controverted at trial, would entitle the movant to a Rule 50 judgment as a matter of law, that evidence must be accepted as true in a summary judgment motion, when the party opposing the motion does not offer counter-affidavits or other evidentiary material showing that a genuine issue remains to be tried, or that she is unable to present facts justifying opposition to the motion under Rule 56(d). *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552; *Liberty Lobby*, 477 U.S. at 250, 106 S. Ct. at 2511 (standard for granting summary judgment mirrors the standard for a directed verdict under Fed. R. Civ. P. 50(a)).

Nevertheless, if the moving party cannot lay out all the elements of her claim by citing facts supporting each element of her case, without the court drawing inferences in her favor, and without demonstrating why the record is so one-sided as to rule out the possibility that the non-moving party would prevail at trial, then the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response. *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996); *Stryker Corp. v. XL Ins. Co., Inc.*, 57 F. Supp. 3d 823 (W.D. Mich. 2014), *rev'd & remanded on other grounds sub nom. Stryker Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 842 F.3d 422 (6th Cir. 2016) (When the party moving for summary judgment "bears the burden of persuasion at trial, the party's initial summary judgment burden is 'higher in that she must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."); s*ee* Fed. R. Civ. P. 56 advisory committee's notes (1963) ("Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.")

Thus, given the *de novo* standard of review and the materiality of insolvency in a fraudulent transfer case, the Panel must determine, independently of the trial court's finding, whether the Trustee, as the moving party with the ultimate burden of proof, properly supported her summary judgment motion with proof of insolvency so concretely that the bankruptcy court was justified in directing judgment in her favor without first conducting a trial. Stated differently, the Panel must determine whether the bankruptcy court was justified under the rules in avoiding the transfers (and entering a substantial money judgment against Ms. Anderson) without requiring the Trustee to prove "balance sheet" insolvency on the date of the transfer, and without giving Ms. Anderson her "day in court." It is not sufficient for the trial court simply to predict which party will prevail at trial, even though the *prediction* may be shared by judges on the reviewing court. Depriving a litigant of her day in court requires scrupulous adherence to the rules governing summary judgment.

**BACKGROUND**

In June 2004, the Debtor and Ms. Anderson moved in together and merged their assets with the intent of becoming domestic partners, apparently because, as a same sex couple, there was no other option open to them at the time. They lived together for roughly ten years, acquiring property and incurring debts and otherwise running their lives as other couples in the same household customarily do. Before ending their personal relationship in 2013, they acquired several pieces of artwork and two parcels of real estate in Murfreesboro, Tennessee — one located on Brentmeade Drive and one on Cliffview Court.

Although the couple parted ways in September 2013, they did not formally dissolve their domestic partnership until April 16, 2014, when, without benefit of counsel, they executed a form document entitled "Dissolution of Domestic Partnership" (the "Dissolution Agreement,"). In the Dissolution Agreement, they decided to split the assets unevenly, with Ms. Anderson receiving property totaling at least $174,890.21 in value including the Brentmeade Drive and Cliffview Court[2] properties, the artwork, and three vehicles, while the Debtor received only three vehicles worth $7,800.28. *Limor v. Anderson (In re Scarbrough)*, 588 B.R. 501, 504 (Bankr. M.D. Tenn. 2018); Dissolution Agreement at ¶¶ 1, 2, 5, Adv. No. 3:17-ap-90076 ECF No. 18-3. The Debtor and Ms. Anderson also agreed that their debts would continue to be paid by whomever was named as the indebted party. Dissolution Agreement at ¶ 9 (ECF No. 10-1-1).

The Debtor filed bankruptcy for the third time on June 8, 2015. She had previously filed on February 21, 1997 (Case No. 3:97-bk-0172) and June 18, 2005 (Case No. 3:15-bk-03894), events which the bankruptcy court cited in its opinion. In her most recent bankruptcy petition, she listed her total assets as $53,630.00 and her total liabilities as $1,060,148.00. *Scarbrough*, 588 B.R. at 505. In its Memorandum and Order dated June 29, 2018, the bankruptcy court listed

---

[2]Although the Debtor and Ms. Anderson agreed to divide their assets as reflected in the Dissolution Agreement, apparently they also agreed that the Debtor could live in the Cliffview Court house for some period of time. She vacated Cliffview Court in May 2014 and ultimately transferred her "share" of that property to Ms. Anderson on April 28, 2015. She received nothing in return for the Cliffview Transfer. *Scarbrough*, 588 B.R. at 505. As noted above, Ms. Anderson has abandoned any challenge to this transfer by omitting from her appellate brief all but the most perfunctory reference to it. *See supra* n.1.

various debts of the Debtor totaling a minimum of $124,800.00 dating back to at least April 16, 2014, the time of the Brentmeade Drive and artwork transfer (together, hereinafter referred to as the "Brentmeade Transfer"). *Scarbrough*, 588 B.R. at 504–06. The Brentmeade Transfer and the valuations reflect a time period that is well within the two-year look back period of 11 U.S.C. §548, but more than a year before the filing of the Debtor's most recent bankruptcy petition.

## DISCUSSION

With respect to the Brentmeade Transfer, the bankruptcy court found that the Debtor: (1) voluntarily transferred an interest in property within two years of filing the bankruptcy petition; (2) received less than reasonably equivalent value in exchange; and (3) was insolvent at the time of or became insolvent as a result of the transfers. 11 U.S.C. § 548(b)(1).[3] Ms. Anderson argues that the Trustee failed to offer sufficient evidence regarding the Debtor's insolvency, but concedes the Trustee established every other element of her case for avoidance and recovery. Although she agrees that the bankruptcy court correctly defined insolvency using the balance sheet test, she argues that the court did not apply the definition properly.

Both the Bankruptcy Code and the bankruptcy court define insolvency as:

(A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of-- (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under section 522 of this title[.]

11 U.S.C. § 101(32)(A). The bankruptcy court purported to apply the definition to the facts stating:

[T]he record reflects that the Debtor has a history of not paying her debts and of filing for chapter 7 bankruptcy . . . [O]n the date of the Brentmeade Transfer and the Artwork Transfer (April 16, 2014), the Debtor had liability of at least $124,800.00, which far exceeded *the value of the assets the Debtor received*

---

[3]The constructive fraud provision of 11 U.S.C. § 548 does not require proof of intent; instead, the sole issues are whether the debtor received less than reasonably equivalent value in exchange for the transfers in question and whether the debtor was insolvent at the time of, or was rendered insolvent by, the transfers. *Lingham Rawlings, LLC v. Gaudiano* (*In re Lingham Rawlings, LLC*), Adv. No. 10-3125, 2013 WL 1352320, at \*26 (Bankr. E.D. Tenn. 2013).

pursuant to the Dissolution Agreement (three vehicles with an aggregate value of $7,800.28) . . . Accordingly, the Court finds that the Debtor was insolvent on the dates of the Transfers or became insolvent as a result of the Transfers.

*Scarbrough*, 588 B.R. at 508 (emphasis added).

The Appellant contends there was insufficient proof in the summary judgment record for the Trustee to meet her burden of showing that the Debtor was insolvent on April 16, 2014, the date of the Brentmeade Transfer. Rather, she argues that the bankruptcy court simply relied on the fact that the Debtor did indeed have a history of not paying her debts as they became due, and of filing multiple bankruptcy cases between 1997 and the present. She contends, however, that the 1997 and 2005 bankruptcy filings have no relevance to the current case, and even if the June 2015 case filing is germane, it does not prove that the Debtor was insolvent on April 16, 2014.

For her part, the Trustee disagrees that there was not enough evidence for the court's finding on insolvency and points out that beyond Ms. Anderson's bare assertions, she did not offer any affidavits or point to other evidence in the record questioning insolvency, and still offers no facts or proof to the contrary, nor does she otherwise attempt to negate the Trustee's proof except through argument.

Using the definition of insolvency under 11 U.S.C. § 101(32), also known as the "balance sheet" approach as stated by the bankruptcy court, the Trustee would have to show the value of all the Debtor's assets and the extent of her liabilities at the time of the Brentmeade Transfer. Some courts have found that a debtor's schedules may be used to show insolvency (as the Trustee did in this case) but only if the bankruptcy petition was filed close in time to the transfer in question and a debtor's financial situation has not changed significantly between the two dates. *Parlon v. Claiborne* (*In re Kaylor Equip. & Rental, Inc.*), 56 B.R. 58, 62 (Bankr. E.D. Tenn. 1985) (In establishing the insolvency of the debtor, a trustee may show that "the debtor was insolvent at a reasonable time subsequent to the date of the alleged transfer, accompanied by proof that no substantial change in the debtor's financial condition occurred during the interval.").

The bankruptcy court found that the Dissolution Agreement listed the couple's partnership assets, as follows:

|    | Description of Asset |
|----|----------------------|
| a. | Real property known as 206 Brentmeade Drive, Murfreesboro, Tennessee ("Brentmeade Property") |
| b. | Real property known as 1959 Cliffview Court, Murfreesboro, Tennessee ("Cliffview Property") |
| c. | Art purchased during the relationship ("Artwork") |
| d. | 2008 Mustang, Mark 1 package |
| e. | 2012 Nissan Pathfinder |
| f. | 2008 Honda Shadow 750 Motorcycle (Blue) |
| g. | 2007 Saab Turbo 9.3 |
| h. | 2011 Nissan Titan |
| i. | 2008 Honda Shadow 750 Motorcycle (Maroon) |

*Scarbrough*, 588 B.R. at 504.  There is no statement regarding other assets, if any, that the Debtor owned before, during, or after her partnership with Ms. Anderson.  For instance, there is no finding as to whether the Debtor brought assets into the relationship that remained with her until the break-up — i.e., assets other than partnership assets.  Moreover, other than a reference to the previous bankruptcy cases (and the impermissible inference in the Trustee's favor that the previous filings meant the Debtor could not have had any assets of her own on the date of transfer), the bankruptcy court pointed to nothing in the record establishing that the Debtor was bereft of all property on that crucial date.  Likewise, the court did not discuss or consider the possibility that the Debtor might have acquired additional assets of her own during the relationship or in the interim between their separation in 2013 and the execution of the Dissolution Agreement in 2014.  The bankruptcy court evidently drew inferences about the value of the Debtor's assets on the date of the Brentmeade Transfer — inferences in favor of the Trustee.

Further, the bankruptcy court found that the couple's six motor vehicles were divided equally, but that inequity resulted from Ms. Anderson's receiving all the real property and the

artwork while the Debtor received nothing. In a footnote, however, the bankruptcy court states that Ms. Anderson transferred a 50% interest to the Debtor in the Cliffview Property on October 30, 2013, which predated the Dissolution Agreement. *Scarbrough*, 588 B.R. at 505, n. 1. Yet, the court goes on to find that the entire universe of the Debtor's assets on April 16, 2014 (almost five months later) was $7,800.28 — at a time when the Debtor still owned at least a one-half interest in the Cliffview Property.

In what appears to be more of a "reasonably equivalent value" analysis rather than an insolvency analysis, the court stated that "on the date of the Brentmeade Transfer . . . (April 16, 2014), the Debtor had liability of $124,800, which far exceeded *the value of the assets the Debtor received* pursuant to the Dissolution Agreement (three vehicles with an aggregate value of $7,800.28)." *Scarbrough*, 588 B.R. at 508 (emphasis added). The bankruptcy court makes no other statement regarding the value of the Debtor's assets as of April 16, 2014.

This dollar value of $7,800.28 in assets, however, is incorrect because the Debtor had at least a 50% ownership in the Cliffview Property, and that ownership value was later found to be $38,419.67. *Scarbrough*, 588 B.R. at 504. Still, there are no other findings about the Debtor's assets except those mentioned in the Dissolution Agreement and a reference to the bankruptcy petition filed June 8, 2015, over one year later. The Panel recognizes that the Debtor's liabilities on the petition date substantially exceeded the value of her assets (at least according to the schedules) but this does not excuse the Trustee from establishing that she meets the "balance sheet" test as of the date of the Brentmeade Transfer over a year earlier.

If the Trustee were presenting her case at trial, when the bankruptcy court could permissibly draw inferences in her favor regarding, for example, the absence of any change in the Debtor's financial picture between the Brentmeade Transfer and the bankruptcy filing, she may have been able to start with the Debtor's financial condition on the petition date and extrapolate back in time to show that the Debtor must have been insolvent on the transfer date. This is sometimes called "retrojection." *Daneman v. Stanley* (*In re Stanley*), 384 B.R. 788 (Bankr. S.D. Ohio 2008) (explanation of retrojection). Understandably, the Trustee did not do this because in the context of the Motion, inferences should not have been drawn in her favor; presumably there was no evidence in the record as to the Debtor's financial condition at the time

of the transfer; and there is a relatively large gap between the filing of the petition and the Brentmeade Transfer. Furthermore, although the bankruptcy court properly cited the balance sheet test for insolvency, the test was not correctly applied under the circumstances. In purporting to apply the balance sheet test to the Brentmeade Transfer, the court simply compared the Debtor's debts as of the time of the transfer to what she received under the Dissolution Agreement, after prefacing the comparison with a reference to prior bankruptcy filings. *Scarbrough*, 588 B.R. at 508. The error is understandable, in part, because the Trustee simply pointed to the Debtor's schedules to show that the Debtor was insolvent fourteen months earlier.

Even at trial, using such a protracted time period between the transfer date and the petition date would probably result in "stretching retrojection analysis past its breaking point." *Stanley*, 384 B.R. at 807. "The period of time over which retrojection has been approved ranges from a few weeks to several months," *Bartl v. Twardy* (*In re Claxton*), 32 B.R. 224, 232 (Bankr. E.D. Va. 1983), but not years. "Insolvency determined as of one date may form the basis for the inference that insolvency existed on another date if the dates are relatively close in time and if no significant transactions occurred between the two dates." *Stanley*, 384 B.R. at 808 (nearly two year gap too long); *Gold v. Laines* (*In re Laines*), 352 B.R. 397, 402 n. 6 (Bankr. E.D. Va. 2005) (holding that January 4, 2004 schedules and statement of financial affairs could not be used to infer insolvency as of the date of transfers that occurred on March 22, 2001, March 26, 2001 and December 26, 2002); *Dahar v. Jackson* (*In re Jackson*), 318 B.R. 5, 16–17 (Bankr. W.D. Ky. 2004) (over two-year gap was too long); *Nicholls v. Jones* (*In re Jones*), No. 02-12799, 2004 WL 826031 at *4 (Bankr. D. Colo. Feb. 5, 2004) (five-month gap was too long); *Washington Bancorporation v. Hodges* (*In re Washington Bancorporation*), 180 B.R. 330, 334 (Bankr. D.C. 1995) (six-month gap was too long); *War Eagle Floats, Inc. v. Travis* (*In re War Eagle Floats, Inc.*), 104 B.R. 398, 400 (Bankr. E.D. Okla. 1989) (six-month gap was too long).

Nevertheless, for the Trustee to succeed in justifying summary judgment in her favor, she must have shown concretely that the Debtor was insolvent, or became insolvent, at the time of the Brentmeade Transfer or close in time to it. The Trustee cannot rely on evidence too far in the past or future, because such evidence does not paint a clear picture regarding the Debtor at the time of the transfer itself. *Cf. Lisle v. John Wiley & Sons, Inc.* (*In re Wilkinson*), 196 F. App'x.

337, 340 (6th Cir. 2006) (court cannot determine reasonable equivalent of a past transfer based on present values); s*ee generally, Hunter v. Sylvester Material Co.* (*In re Turkeyfoot Concrete, Inc.*), 198 B.R. 506 (Bankr. N.D. Ohio 1996) (trustee did not adequately prove the debtor's insolvency at the time of a "preferential" transfer in part because the evidence detailed the debtor's financial situation prior to the transfer, not as of the transfer date).  Couple this with the Trustee's heightened summary judgment obligations due to her burden of proof at trial, as well as the prohibition at the summary judgment stage against drawing inferences in the Trustee's favor, and the Panel concludes that the Debtor's insolvency as to the Brentmeade Transfer is a genuine issue of material fact that cannot be resolved on a motion for summary judgment with the record presented to the bankruptcy court.  The bankruptcy court must conduct additional, albeit limited, proceedings to determine the value of the Debtor's assets as of April 16, 2014 — the date of the Brentmeade Transfer.

Finally, as noted above, given the absence of a serious challenge to the Cliffview Transfer on appeal, the Panel finds no error in avoiding that transfer and holding Ms. Anderson to account for the value she received beyond the value she gave to the Debtor in April 2015.  Even without a waiver of the challenge, the proximity between the execution of the schedules and the Cliffview Transfer likely warranted the bankruptcy court's retrojection analysis as to that transfer.

**CONCLUSION**

If the inquiry on this appeal were whether the bankruptcy court guessed correctly about who would prevail at trial — the Trustee or Ms. Anderson — the Panel probably would agree with the court below and affirm.  As trial judges who find facts without the benefit of juries, and who strongly rely on inferences to fill gaps in a scanty record, it is tempting to accelerate the ultimate decision when, based on past experience, a trial court believes it can see where the case is heading at trial.  The question as the Panel views it on appeal, however, is more nuanced and technical.

The question from the record and from the bankruptcy court's own analysis is whether the case for avoiding each transfer was strong enough to deprive Ms. Anderson of her day in

court, indulging every reasonable inference in favor of trial on the merits. Consequently, the Panel finds that the bankruptcy court erred when it based its decision regarding insolvency as a result of the Brentmeade Transfer solely on the financial information found in the Debtor's schedules and the value of the assets transferred pursuant to the Dissolution Agreement: the June 2015 bankruptcy schedules were too remote in time to the April 16, 2014 Brentmeade Transfer, and the assets listed in the Dissolution Agreement were not necessarily the only assets belonging to the Debtor.

The bankruptcy court failed sufficiently to consider the Trustee's trial burden when evaluating the summary judgment record, and apparently drew inferences against Ms. Anderson in conducting the insolvency analysis based on the Debtor's several bankruptcy filings, tending to supplant "balance sheet" insolvency with "equitable insolvency." Consequently, the bankruptcy court should have insisted on a stronger showing from the moving party before depriving Ms. Anderson of her day in court on the issue of the Debtor's insolvency at the time of the Brentmeade Transfer.

For the foregoing reasons, the decision of the bankruptcy court regarding the Cliffview Transfer (as defined herein) is AFFIRMED but the decision regarding the Brentmeade Transfer (as defined herein) is REVERSED and REMANDED for further proceedings consistent with this opinion.